## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:23-cv-847

| | |
|---|---|
| CHRISTEL ENGLAND, KAREN MEYERS, and ANGELA JOYNER-PERRY, *Individually and on Behalf of All Others Similarly Situated*,<br><br>            Plaintiffs<br><br>v.<br><br>SELENE FINANCE, LP,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CLASS ACTION COMPLAINT**
[Jury Trial Demanded]

Plaintiffs Christel England ("England"), Karen Meyers ("Meyers"), and Angela Joyner-Perry ("Joyner-Perry"), individually and on behalf of Plaintiffs and all others similarly situated, file this Class Action Complaint against Selene Finance, LP ("Selene" or "Defendant") and state:

### NATURE OF THE CASE

1. This is a consumer protection action brought by Plaintiffs and all others similarly situated to obtain redress from Selene's systematic use of unlawful and unfair debt collection practices to collect upon residential consumer mortgage loans.

2. Specifically, during the relevant time period, Selene sent borrowers form letters alleging that the borrowers are in default of their mortgages and that the failure to immediately make a ***full and complete*** payment of all arrearages will result in acceleration

of their loan (hereinafter referred to as the "NC Final Letters"). However, the false ultimatum contained in the NC Final Letters contradicts Selene's actual policies regarding acceleration and foreclosure.

3.     The NC Final Letters sent by Selene to each of the Plaintiffs and all others similarly situated is a false and misleading threat of acceleration and foreclosure designed to intimidate borrowers into making payments to Selene that are beyond their means and beyond what is necessary to avoid acceleration and to save their homes from foreclosure.

4.     This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all borrowers to whom Selene has or will send one or more NC Final Letters pursuant to Selene's standardized policies and procedures during the applicable statute of limitations period in violation of state and Federal law as further set forth herein.

## JURISDICTION AND VENUE

5.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

6.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 in that this action arises under, *inter alia*, the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq*.

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The matters in controversy in this action exceed $5,000,000.00 in statutory damages.

8.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 in that the state law allegations contained herein are so related to the claims asserted under 15 U.S.C.

1692 *et seq*. over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims asserted herein occurred within this District.

## PARTIES

10.     Plaintiff England is a citizen and resident of Rockingham County, North Carolina.

11.     Plaintiff England is a "consumer" as that term is defined by N.C.G.S. § 75-50 and/or N.C.G.S. § 58-70-15; Plaintiff is a "consumer" as that term is defined by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(3) since she is a natural person allegedly obligated to pay a consumer debt.

12.     Plaintiff Meyers is a citizen and resident of New Hanover County, North Carolina.

13.     Plaintiff Meyers is a "consumer" as that term is defined by N.C.G.S. § 75-50 and/or N.C.G.S. § 58-70-15; Plaintiff is a "consumer" as that term is defined by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(3) since she is a natural person allegedly obligated to pay a consumer debt.

14.     Plaintiff Joyner-Perry is a citizen and resident of Franklin County, North Carolina.

15.     Plaintiff Joyner-Perry is a "consumer" as that term is defined by N.C.G.S. § 75-50 and/or N.C.G.S. § 58-70.

16.     Selene is a corporation organized and existing under and by virtue of the laws of the State of Texas with a principal place of business in Coppell, Texas.

17.     Selene frequently acts as a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6), including with regard to Plaintiffs England and Meyers because, upon information and belief, Selene obtained the servicing rights while in a state of default.

18.     Selene is a "debt collector," as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

19.     Alternatively, Selene is a "collection agency" as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15.

20.     Selene is regularly engaged in the business of collecting debt in the State of North Carolina. Its employees, affiliates, directors, agents, and attorneys act under the direction and supervision of Selene and, therefore, Selene is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theory of respondeat superior.

## FACTUAL ALLEGATIONS

21.     Selene is a servicer of mortgages for residential housing loans. As a mortgage servicer, Selene contracts with lenders to collect payments, fees, and other amounts owed by the homeowner and to provide other "services" to investors relating to the homeowner's loan.

22.     Selene earns money based upon a percentage of the funds that it collects from consumers' mortgage payments as well as through the assessment of late fees and other

4

penalties.

23.     Upon information and belief, Selene services not less than hundreds of thousands of loans throughout the United States, including Plaintiffs' mortgage loans.

24.     When Selene acquires the servicing rights to a particular loan portfolio, many of the loans, if not the majority of the loans, contained in that portfolio are delinquent when Selene acquires the rights to the portfolio.

25.     Other loans contained in Selene's portfolio become delinquent during the course of Selene's servicing of the loans.

26.     Upon information and belief, when loans for North Carolina customers become more than 45 days delinquent, Selene sends a letter that it refers to as an "NC Final Letter" to coerce and intimidate the borrower into paying the entire default amount of the loan.

<u>Plaintiff Christel England</u>

27.     Plaintiff England is the owner of a residential home located in Ruffin, North Carolina 27326 that she purchased in or around 2006. Upon information and belief, this home is secured by a mortgage and that is serviced by Selene.

28.     Plaintiff England's mortgage loan is governed by a promissory note (the "Note") that defines "default" as failure to "pay the full amount of each monthly payment on the date it is due . . ."

29.     Prior to Selene, another mortgage company serviced Plaintiff England's mortgage loan.

30.     At the time Selene acquired the servicing rights to Plaintiff England's

5

mortgage loan and the service transfer became effective, Plaintiff England had been in default on her mortgage loan for several months due to nonpayment resulting in a delinquency of 30 days or more.

31.     On or about August 1, 2023, Selene mailed Plaintiff England a collection letter with the heading "NOTICE OF DEFAULT AND INTENT TO ACCELERATE" (the "NC Final Letter") stating her mortgage loan is in default and threatening acceleration of the entire loan amount and "sale of the property and/or foreclosure by judicial proceeding and sale of the property." A true and correct copy of which is attached hereto as **Exhibit B**.

<div align="center">

Plaintiff Karen Meyers

</div>

32.     Plaintiff Meyers is an owner of a residential home located in Wilmington, North Carolina 28411 that she purchased in July of 2001. Upon information and belief, this home is secured by a mortgage and that is serviced by Selene.

33.     Plaintiff Meyers' mortgage loan is governed by a promissory note (the "Note") that defines "default" as failure to "pay the full amount of each monthly payment on the date it is due . . ."

34.     Prior to Selene, another mortgage company serviced Plaintiff Meyers' mortgage loan.

35.     At the time Selene acquired the servicing rights to Plaintiff Meyers' mortgage loan and the service transfer became effective, Plaintiff Meyers had been in default on her mortgage loan for several months due to nonpayment resulting in a

delinquency of 30 days or more.

36.     On or about April 17, 2023, Selene mailed Plaintiff Meyers a collection letter with the heading "NOTICE OF DEFAULT AND INTENT TO ACCELERATE" (the "NC Final Letter") stating her mortgage loan is in default and threatening acceleration of the entire loan amount and "sale of the property and/or foreclosure by judicial proceeding and sale of the property." A true and correct copy of which is attached hereto as **Exhibit C.**

<u>Plaintiff Angela Joyner-Perry</u>

37.     Plaintiff Joyner-Perry is an owner of a residential home located in Kittrell, North Carolina 27544 that she purchased in or around January of 2007. Upon information and belief, this home is secured by a mortgage and that is serviced by Selene.

38.     Plaintiff Joyner-Perry's mortgage loan is governed by a promissory note (the "Note") that identifies her as being in default if she does "not pay the full amount of each monthly payment on the date it is due…"

39.     Prior to Selene, another mortgage company serviced Plaintiff Joyner-Perry's mortgage loan.

40.     Pursuant to the Note, Plaintiff Joyner-Perry initially owed $104,000, plus interest at the rate of 6.75% per year (the "Debt"). The Note was to be paid in equal monthly installments of $665.54 beginning on March 1, 2007, and continuing until February 1, 2037 (the "Monthly Payment").

41.     However, during the time that Selene serviced the Debt, it sent out debt collection letters that falsely claimed that amounts were owed in excess of the amount actually owed by Plaintiff Joyner-Perry. Selene also reported false and internally

7

contradictory amounts to different credit bureaus.

42. These debt collection communications falsely represented the amount of money that Plaintiff Joyner-Perry actually owed.

43. Upon information and belief, Plaintiff Joyner-Perry generally made each and every monthly payment on time; or if she was late, she paid all amount of late fees and penalties to become current on her mortgage.

### Selene's NC Final Letters

44. Upon information and belief, when loans for its customers become more than 45 days delinquent, Selene sends an "NC Final Letter" to coerce and intimidate the borrower into paying the entire default amount of the loan. An exemplar Final Letter sent to each of the Plaintiffs that is materially similar to the NC Final Letters sent to putative North Carolina State Law Class members.

45. Upon information and belief, **Exhibits B and C** are substantially the same as the NC Final Letter sent to all borrowers in North Carolina who are more than 45 days delinquent on a loan that Selene services.

46. The NC Final Letter specifically states:

> "The total amount you must pay to cure default stated above must be received by [date (35 days from date of the North Carolina Final Letter)]. Failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument, sale of the property and/or foreclosure by judicial proceeding and sale of property."

47.     Selene has contractual obligations to provide notices to borrowers like Plaintiffs and to putative North Carolina State Law Class members of their default status.

48.     Rather than simply providing notice, Selene instead utilizes the notice to make false threats of accelerating borrowers' loans.

49.     The NC Final Letters create a false sense of urgency by threatening to accelerate the entire indebtedness of a consumer's loan and proceed with foreclosure on the property if the "total amount you must pay to cure default" is not paid within 35 days from the date of letter. However, upon information and belief, a borrower need only keep their loans less than 120 days past due to avoid acceleration and foreclosure.

50.     Upon information and belief, if a borrower fails to meet the deadline outlined in the NC Final Letters, Selene takes no action at all.

51.     Put simply, Selene does not accelerate loans in the manner threatened by its NC Final Letters in the usual course of business.

52.     Upon information and belief, Selene will not accelerate borrowers' loans and proceed to foreclosure even if the borrower fails to make a payment equal to the default amount listed in the NC Final Letter ***and*** fails to make any payments that come due during the notice period.

53.     The NC Final Letters misrepresent the conditions under which Selene's intends to accelerate loans and materially deceive consumers into believing their loans *will* be accelerated if they fail to fully cure their default prior to the Expiration Date.

54.     The NC Final Letters cause borrowers, including the Plaintiffs and putative North Carolina State Law Class members, to believe that they are at risk of acceleration

9

and foreclosure if all arrearages to Selene are not paid within the time period identified in the Letter.

55.     The NC Final Letters cause borrowers to believe that they will lose their homes if they do not become current on their loan within the time period identified in the Letter.

56.     The NC Final Letters misrepresent Selene's intentions and present consumers with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the NC Final Letter, or face acceleration and ultimately foreclosure.

57.     The NC Final Letters are materially misleading in that they threaten consumers, including the named Plaintiffs and putative North Carolina State Law Class members, with acceleration and foreclosure when Selene has neither the present intent, nor the present ability, to undertake such actions.

58.     The empty threats of acceleration and foreclosure contained within the NC Final Letter are clearly designed to scare and intimidate individuals into paying delinquent amounts.

59.     The empty threats of acceleration and foreclosure contained within the NC Final Letter have the potential of causing individuals, including the named Plaintiffs and putative North Carolina State Law Class members, to send additional money to Selene that, absent the false and misleading statements, they could have utilized on other necessary expenditures, including food and utility payments.

60.     The empty threats of acceleration and foreclosure make it impossible for a consumer to make a rational decision in response to the NC Final Letter because it threatens

immediate, irreversible consequences.

61. The empty threats of acceleration and foreclosure are designed to scare consumers into making payments they otherwise may not.

62. Selene understands the frightening and unnerving nature of the misrepresentations utilized in its NC Final Letters.

63. Upon information and belief, the NC Final Letters were purposefully crafted in such a way to frighten and intimidate consumers into paying money to Selene.

64. The Plaintiffs and putative North Carolina State Law Class members have received numerous Final Letters substantially identical to **Exhibits B and C**.

65. Upon information and belief, each North Carolina State Law Class member has received one or more NC Final Letter.

66. Each NC Final Letter constitutes a separate violation of the FDCPA, 15 U.S.C. § 1692, *et seq*., NCCAA/NCDCA, and/or Negligent Misrepresentation doctrine in that, *inter alia*, the NC Final Letters threaten to take action not taken in the ordinary course of business nor intended to be taken in the particular instance in which was threatened.

67. Moreover, each NC Final Letter misrepresents Selene's legal ability to foreclose to the extent the NC Final Letters have the capacity to mislead the least sophisticated consumer into believing that Selene has the legal right to foreclose on loans that are less than 120 days delinquent and/or that Selene has the legal right to foreclose without providing additional notice to the consumer.

68. As a result of the forgoing, the Plaintiffs and putative North Carolina State Law Class members have experienced anxiety, stress, anger, frustration, and mental

anguish which is fairly traceable to their receipt of the NC Final Letters containing the false ultimatums which, *inter alia*, caused informational harms, violated substantive rights to be free from unfair, abusive, and misleading debt collection communications, and misled Plaintiffs and putative North Carolina State Law Class members with regard to the amount of money that had to be paid and when it needed to be paid to save their homes from acceleration and/or foreclosure.

## CLASS ACTION ALLEGATIONS
### "North Carolina State Law Class"

69.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

70.    Selene is a "collection agency" as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15 or a "debt collector," as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

71.    Plaintiffs and each member of the proposed North Carolina State Law Class are "consumers," as that term is defined by N.C.G.S. § 58-70-90 and/or § 75-50.

72.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action individually and on behalf of the following Class:

> All North Carolina residential mortgagors to whom Selene sent a letter substantially similar or materially identical to the letters attached as Exhibits B and C warning or acceleration of the home loan and/or commencement of foreclosure proceedings upon less than full payment of the "amount due" or "default amount," within the applicable statute of limitations period (the "North Carolina State Law Class").

73.    The individuals protected by the North Carolina State Law Class are limited

by the applicable statute of limitation prior to the filing of this Complaint, through the date of final resolution of this matter.

74.    Excluded from the North Carolina State Law Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Selene and any entity in which Selene has a controlling interest in Selene and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the Class.

75.    *Numerosity*: Plaintiffs are unable to provide a specific number of members in the North Carolina State Law Class because that information is solely in the possession of Selene. However, the exact number of Class members, including the names and addresses of all Class members, will be easily ascertained through a review of Selene's business records. Upon information and belief, the putative North Carolina State Law Class contains at least a hundred consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable.

76.    *Commonality*: Selene, in seeking to collect the mortgage loan debt of Plaintiffs and the putative North Carolina State Law Class, sent materially identical letters to Plaintiffs and putative North Carolina State Law Class members. Each and every member of the proposed North Carolina State Law Class is subject to Selene's policies and procedures.

77.    Each member of the proposed North Carolina State Law Class has a debt for which Selene acquired the servicing rights.

78.    Furthermore, common questions of law and fact predominate over any

13

individual issues that may be presented, because Selene has a pattern, practice and policy of communicating with all borrowers in a manner that violates federal and state collection laws. Common questions include, but are not limited to: whether Selene's pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the NC Final Letter, or some other written correspondence substantially similar to the NC Final Letter, constitutes a violation of the NCCAA or NCDCA.

79. *Typicality*: The claims of Plaintiffs are typical of the claims of the proposed Class, and all are based on the same facts and legal theories, as all such claims arise out of Selene's conduct.

80. *Adequate Representation*: Plaintiffs are adequate representatives of the Class in that the Plaintiffs have no antagonistic or conflicting claims with any other member of the Class. Plaintiffs have also retained counsel experienced in the prosecution of complex class actions, specifically including experience with consumer class actions.

81. Neither Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this action. Plaintiffs are aware of the responsibilities to the putative Class and have accepted such responsibilities.

82. *Predominance and Superiority*: The Class is appropriate for certification because questions of law and fact common to the members of the North Carolina State Law Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the North Carolina State Law Class is impracticable. Should individual class members be required to bring separate actions,

14

this Court or courts in other jurisdictions would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

83.     Further, Selene has acted and refused to act on grounds generally applicable to the proposed North Carolina State Law Class, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

## CLASS ACTION ALLEGATIONS
### "FDCPA Sub-Class"

84.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

85.     Pursuant to Federal Rules of Civil Procedure 23, Plaintiffs England and Myers have brought this action individually and on behalf of a class which is tentatively defined as:

> All North Carolina residential mortgagors whose servicing rights were acquired by Selene after their loan was in default and to whom Selene sent a letter substantially similar or materially identical to the letters attached as Exhibits B and C warning of acceleration of the home loan and/or commencement of foreclosure proceedings upon less than full payment of the "amount due" or "default amount," within the applicable statute of limitations period (the "FDCPA Sub-Class").

86.     The FDCPA Sub-Class Period for purposes of this Complaint is for the one-

15

year period prior to the filing of this Complaint, through the date of notice of the class certification is issued to the FDCPA Sub-Class.

87. Excluded from the FDCPA Sub-Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Selene and any entity in which Selene has a controlling interest in Selene and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the FDCPA Sub-Class.

88. *Numerosity*: Plaintiffs are unable to identify the exact number of members of the FDCPA Sub-Class because that information is solely in the possession of Selene. However, the exact number of class members, including the names and addresses of all class members, will be easily ascertained through a review of Selene's business records. Upon information and belief, Plaintiffs believe that the putative FDCPA Sub-Class is at least 100 consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable.

89. *Commonality*: Selene, in seeking to collect Plaintiffs' mortgage loan debt and the debt of each member of the proposed class, sent letters threatening to accelerate each member of the class's debt when it had no intention to accelerate the debt. Each and every member of the proposed FDCPA Sub-Class is subject to Selene's policies and procedures.

90. Selene frequently acts as a "debt collector" as that term is defined by 15 U.S.C § 1692a(6).

91. Each member of the proposed FDCPA Sub-Class is a "consumer," as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3).

92.     Each member of the proposed FDCPA Sub-Class has a "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

93.     Each member of the proposed FDCPA Sub-Class has a debt for which Selene acquired the servicing rights after the debt was in default.

94.     Furthermore, common questions of law and fact predominate over any individual issues that may be presented, because Selene has a pattern, practice, and policy of communicating with all borrowers in a manner that violates federal and state collection laws. Common questions include, but are not limited to: whether Selene's pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the NC Final Letter, or some other written correspondence substantially similar to the NC Final Letter, constitutes a violation of the FDCPA.

95.     *Typicality*: The claims of Plaintiffs are typical of the claims of the proposed FDCPA Sub-Class, and all are based on the same facts and legal theories, as all such claims arise out of Selene's conduct.

96.     *Adequate Representation:* Plaintiffs are adequate representatives of the FDCPA Sub-Class in that they do not have antagonistic or conflicting claims with other members of the class. Plaintiffs have also retained counsel experienced in the prosecution of complex class actions, specifically including consumer class actions.

97.     Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative FDCPA Sub-Class and have accepted such responsibilities.

98.     *Predominance and Superiority*: The FDCPA Sub-Class is appropriate for

17

certification because questions of law and fact common to the members of the FDCPA Sub-Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the FDCPA Sub-Class is impracticable. Should individual class members be required to bring separate actions, this Court or courts throughout North Carolina would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

99. Further, Selene has acted and refused to act on grounds generally applicable to the proposed class, thereby making appropriate final injunctive and declaratory relief with respect to the FDCPA Sub-Class as a whole.

## **FIRST CAUSE OF ACTION**
(Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*)

100. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

101. Selene often acts as a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692a(6).

102. Selene acted as a "debt collector" in servicing the mortgage loans of Plaintiffs and the putative Class members because their loans were in default at the time Selene

18

obtained the servicing rights.

103.    Selene's Final Letter to Plaintiffs and the FDCPA Sub-Class set forth herein as **Exhibit A** expressly states "Selene Finance LP is a debt collector attempting to collect a debt and any information received will be used for that purpose.".

104.    Plaintiffs and all members of the FDCPA Sub-Class are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692a(3) since they are natural persons allegedly obligated to pay a consumer debt.

105.    At all material times, Plaintiffs' debts and the debts of the FDCPA Sub-Class members were "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

106.    Collection letters such as the ones attached to this Complaint as **Exhibits A-C** are to be evaluated by the objective standard of the hypothetical "least sophisticated" consumer test.

107.    The FDCPA, 15 U.S.C. § 1692e states in pertinent part:

>   A debt collector may not use false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>   (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

108.    Selene has attempted to collect debt in violation of 15 U.S.C. § 1692e, in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take.

19

109. Selene has attempted to collect debt in violation of 15 U.S.C. § 1692e, in that it utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

110. Selene has attempted to collect debt in violation of 15 U.S.C. § 1692e in that it falsely represented its intention to accelerate and foreclose on the homes of Plaintiffs and putative FDCPA Sub-Class members in an effort to induce the payment of additional funds.

111. Selene has attempted to collect debt in violation of 15 U.S.C. § 1692e, in that it misrepresented its intentions and presented Plaintiffs and putative FDCPA Sub-Class members with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure.

112. Selene has attempted to collect debt in violation of 15 U.S.C. § 1692e, in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

113. Selene has attempted to collect debt in violation of 15 U.S.C. § 1692e by using false representations and deceptive means, including empty threats of acceleration and foreclosure.

114. FDCPA section 1692(f) states in pertinent part that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

115. Selene has attempted to collect debt in violation of 15 U.S.C. § 1692f in that it unfairly utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

116. Selene has attempted to collect debt in violation of 15 U.S.C. § 1692f in that

20

it falsely represented its intention to accelerate and foreclose on the homes of Plaintiffs and putative FDCPA Sub-Class members in an effort to induce the payment of additional funds.

117.  Selene has attempted to collect debt in violation of 15 U.S.C. § 1692f, in that it misrepresented its intentions and presented Plaintiffs and putative FDCPA Sub-Class members with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure.

118.  Selene has attempted to collect debt in violation of 15 U.S.C. § 1692f, in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

119.  Selene has attempted to collect debt in violation of 15 U.S.C. § 1692f by using unfair and unconscionable means, including empty threats of acceleration and foreclosure.

120.  As a result of Selene's unlawful attempts to collect debt, Plaintiffs and putative FDCPA Sub-Class members are entitled to actual and statutory damages, as well as their reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
(Violations of the North Carolina Debt Collection Act, N.C.G.S. § 75-50, *et seq.*)

121.  The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

122.  Selene is a "debt collector" as defined by the NCDCA, N.C.G.S. § 75-50.

123.  Plaintiffs are each a "consumer" as that term is defined by N.C.G.S. § 75-50.

124.  N.C.G.S. § 75-51 prohibits debt collectors from collecting or attempting to

21

collect any debt alleged to be due and owing by means of any unfair threat, coercion, or attempt to coerce, including but not limited to utilizing threats to take any action not in fact taken in the usual course of business.

125. Selene has attempted to collect debt in violation of N.C.G.S. § 75-51 from Plaintiffs and the North Carolina State Law Class in that it has, *inter alia*, falsely represented that failure to immediately and completely satisfy all arrearages would result in acceleration of their loan in contravention of Selene's specific intentions and ordinary practices.

126. Selene has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take.

127. Selene has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it utilized false threats and misleading representations regarding the amounts that Plaintiffs must pay, and when they must pay it, in order to continue to own their homes.

128. Selene has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it utilized false threats and misleading representations regarding the amounts that Plaintiffs must pay, and when they must pay it, for the sole purpose of coercing additional payments.

129. Selene has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it falsely represented its intention to accelerate and foreclose on Plaintiffs' home's in an effort to induce the payment of additional funds.

130. Selene has attempted to collect debt in violation of N.C.G.S. § 75-51, in that

22

it misrepresented its intentions and presented Plaintiffs with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure.

131. Selene has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

132. Selene has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it threatened to take action, including acceleration and foreclosure, when such actions are not taken in the usual course of business.

133. Selene has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it utilized unfair threats and coercion, including empty threats of acceleration and foreclosure.

134. N.C.G.S. § 75-54 prohibits debt collectors from collecting or attempting to collect debt by any fraudulent, deceptive, or misleading representations.

135. Selene has attempted to collect debt in violation of N.C.G.S. § 75-54 in that it unfairly utilized false threats and misleading representations regarding the amounts that Plaintiffs must pay, and when they must pay it, in order to continue to own their homes.

136. Selene has attempted to collect debt in violation of N.C.G.S. § 75-54, in that it falsely represented its intention to accelerate and foreclose on Plaintiffs' homes in an effort to induce the payment of additional funds.

137. Selene has attempted to collect debt in violation of N.C.G.S. § 75-54, in that it misrepresented its intentions and presented Plaintiffs with a false ultimatum that they

23

must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure.

138. Selene has attempted to collect debt in violation of N.C.G.S. § 75-54, in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

139. Selene has attempted to collect debt in violation of N.C.G.S. § 75-54, by using fraudulent, deceptive, or misleading representations, including empty threats of acceleration and foreclosure.

140. N.C.G.S. § 75-55 prohibits debt collectors from collecting or attempting to collect debt by use of any unconscionable means.

141. Selene has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it unfairly utilized false threats and misleading representations regarding the amounts that Plaintiffs must pay, and when she must pay it, in order to continue to own their homes.

142. Selene has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it falsely represented its intention to accelerate and foreclose on Plaintiffs' homes in an effort to induce the payment of additional funds.

143. Selene has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it misrepresented its intentions and presented Plaintiffs with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure.

144. Selene has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it has threatened to take action, including acceleration and foreclosure, when it had no

24

intention of taking such measures.

145. Selene has attempted to collect debt in violation of N.C.G.S. § 75-55 by using unfair and unconscionable means, including empty threats of acceleration and foreclosure.

146. As a result of Selene's unlawful attempts to collect debt, Plaintiffs and the North Carolina State Law Class are entitled to actual and statutory damages per violation, as well as their reasonable attorneys' fees.

## THIRD CAUSE OF ACTION (*in the alternative*)
(Violations of the North Carolina Collection Agency Act, N.C.G.S. § 58-70, et seq.)

147. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

148. If Selene is not a "debt collector" pursuant to the NCDCA, Selene is a "debt collection agency" as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15.

149. Plaintiffs and the North Carolia Class are each a "consumer" as that term is defined by N.C.G.S. § 58-70-90.

150. Selene has attempted to collect debt from Plaintiffs and the North Carolina State Law Class in violation of N.C.G.S. § 58-70-95 in that, *inter alia*, it has falsely represented that failure to immediately and completely satisfy all arrearages would result in acceleration of Plaintiffs' loans in contravention of Selene's specific intentions and ordinary practices.

151. Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it used false representations and deceptive means to collect or attempt to collect the

25

Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take.

152.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it utilized false threats and misleading representations regarding the amounts that Plaintiffs must pay, and when they must pay it, in order to continue to own their homes.

153.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it utilized false threats and misleading representations regarding the amounts that Plaintiffs must pay, and when they must pay it, for the sole purpose of coercing additional payments.

154.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it falsely represented its intention to accelerate and foreclose on Plaintiffs' homes in an effort to induce the payment of additional funds.

155.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it misrepresented its intentions and presented Plaintiffs with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the NC Final Letters, or face acceleration and ultimately foreclosure.

156.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it has threatened to take action, including acceleration and foreclosure when it had no intention of taking such measures.

157.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it has threatened to take action, including acceleration and foreclosure, when such actions are not taken in the usual course of business.

26

158.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-95 by using unfair threats and coercion, including empty threats of acceleration and foreclosure.

159.     N.C.G.S. § 58-70-115 prohibits collection agencies from collecting or attempting to collect debt by using any unfair practices.

160.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it unfairly utilized false threats and misleading representations regarding the amounts that Plaintiffs must pay, and when they must pay it, in order to continue to own their homes.

161.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it falsely represented its intention to accelerate and foreclose on Plaintiffs' homes in an effort to induce the payment of additional funds.

162.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it misrepresented its intentions and presented Plaintiffs with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the NC Final Letters, or face acceleration and ultimately foreclosure.

163.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

164.     Selene has attempted to collect debt in violation of N.C.G.S. § 58-70-115 by using unfair and unconscionable means, including empty threats of acceleration and foreclosure.

165.     As a result of Selene's unlawful attempts to collect debt, Plaintiffs and the North Carolina State Law Class are entitled to actual and statutory damages per violation,

27

as well as their reasonable attorney's fees.

## FOURTH CAUSE OF ACTION
(Negligent Misrepresentation)

166.   The foregoing allegations are hereby incorporated by reference as if fully restated herein.

167.   In the NC Final Letters, Selene made representations to Plaintiffs and North Carolina State Law Class members as set forth in this complaint.

168.   Those representations were false.

169.   When Selene made the representations, it knew they were untrue or it had a reckless disregard for whether they were true, or it should have known they were untrue.

170.   Selene knew that Plaintiffs and the North Carolina State Law Class members were relying on the representations.

171.   In reliance upon the representations, Plaintiffs and the North Carolina State Law Class members used their funds to pay amounts in excess of what was required to maintain their home. These consumers could have used the additional funds paid to Selene to fund their other necessary living expenses..

172.   Selene had a legal duty to exercise reasonable care and competence in communicating information to Plaintiffs and putative North Carolina State Law Class members.

173.   Selene's actions were negligent, reckless, willful, and/or wanton.

174.   Selene intended for Plaintiffs and putative North Carolina State Law Class members to rely upon the information in the NC Final Letters.

175. Selene failed to use the degree of care, knowledge, intelligence, and judgment which a prudent mortgage servicing company would under the same or similar circumstances, thus Selene failed to exercise reasonable care or competence in communicating the false information.

176. Plaintiffs and putative North Carolina State Law Class members actually relied on the false information supplied by Selene, and such reliance was justified, in that a reasonable person in same or similar circumstances, in the exercise of ordinary care would have relied upon the false information and would not have discovered the information was false.

177. Selene's false representations were reasonably calculated to deceive Plaintiffs and putative North Carolina State Law Class members and did deceive Plaintiffs and putative North Carolina State Law Class members.

178. Selene's false representations were reasonably calculated to deceive Plaintiffs and putative North Carolina State Law Class members and did deceive Plaintiffs and putative North Carolina State Law Class members into paying amounts that they would not have otherwise paid.

179. Selene's false representations were reasonably calculated to deceive Plaintiffs and putative North Carolina State Law Class members and did deceive Plaintiffs and putative North Carolina State Law Class members into believing that their mortgage loan would be accelerated and they would lose their homes.

180. In reliance on the false information provided by Selene, Plaintiffs and putative North Carolina State Law Class members did in fact proximately sustain financial

29

injury.

181.    In reliance on the false information provided by Selene, Plaintiffs and putative North Carolina State Law Class members did in fact proximately sustain informational injury.

182.    As a direct and proximate result of Selene's negligent misrepresentations, Plaintiffs and the North Carolina State Law Class members have been damaged as set forth in this complaint.

183.    As a direct and proximate result of the foregoing, Plaintiffs and the North Carolina State Law Class members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs and all others similarly situated pray the Court for judgment as set forth below:

1. Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives, and appointing the undersigned as Class Counsel;

2. Adjudging that Selene violated the FDCPA, NCDCA/NCCAA, and/or Negligent Misrepresentation doctrine sections enumerated above, and awarding Plaintiffs and other putative North Carolina State Law Class members actual and statutory damages;

3. Awarding Plaintiffs and other putative North Carolina State Law Class members

30

actual and statutory damages their reasonable attorneys' fees and costs incurred;

4. That the compensatory damages of Plaintiffs and putative North Carolina State Law Class members be trebled by the Court pursuant to Chapter 75 of the North Carolina General Statutes;

5. For punitive damages to the extent allowed by law;

6. That the costs of this action be taxed to Selene;

7. For a trial by jury on all issues so triable; and,

8. For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 4th day of October 2023.

<div style="margin-left:50%">

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

s/ *Scott C. Harris*
Scott C. Harris
N.C. State Bar No. 35328
Michael Dunn
N.C. State Bar No.: 47713
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@milberg.com
michael.dunn@milberg.com

**MAGINNIS HOWARD**

Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney

</div>

31

N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:    919-526-0450
Fax:    919-882-8763
kgwaltney@maginnislaw.com
emaginnis@maginnislaw.com

Counsel for Plaintiffs