IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTEL ENGLAND, KAREN          )
MEYERS,  and  ANGELA  JOYNER-    )
PERRY,  individually  and  on    )
behalf of all others similarly   )
situated,                        )
                                 )
                Plaintiffs,      )
                                 )        1:23-cv-00847
        v.                       )
                                 )
SELENE FINANCE, LP,              )
                                 )
                Defendant.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

        This is a putative class action by Plaintiffs Christel

England, Karen Meyers, and Angela Joyner-Perry, individually and

on behalf of all others similarly situated, against Defendant

Selene Finance, LP ("Selene"), a mortgage servicer, alleging

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 et seq., the North Carolina Debt Collection Act (the

"NCDCA"), N.C. Gen. Stat. § 75-50 et seq., the North Carolina

Collection Agencies Act (the "NCCAA"), N.C. Gen. Stat. § 58-70-1

et seq., and negligent misrepresentation under North Carolina

common law.  Before the court is Selene's motion to dismiss

Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure

12(b)(6). (Doc. 10.)  For the reasons set forth below, the motion

will be granted in part and denied in part.

## I.  BACKGROUND

Selene is a servicer of mortgages for residential housing loans.  (Doc. 1 ¶ 21.)  On April 17, 2023, Selene sent Plaintiff Meyers a letter with the heading "NOTICE OF DEFAULT AND INTENT TO ACCELERATE".  (Id. ¶ 36.)  On August 1, 2023 Selene sent Plaintiff England a letter in substantially the same form as that sent to Plaintiff Meyers.  (Id. ¶ 31; cf. Doc. 1-2, Doc. 1-3.)  Plaintiffs allege that Selene sent this form of letter ("Final Letter") to each borrower in North Carolina who is more than 45 days delinquent on a loan that Selene services.  (Doc. 1 ¶¶ 44, 45.)  The Final Letter reads in relevant part:

> Selene Finance LP ("Selene"), the servicer of your mortgage loan, and in accordance with the Security Instrument and applicable state laws, provides you with formal notice of the following: The mortgage loan associated with the Security Instrument is in default for failure to pay the amounts that came due on [date] and all subsequent payments.  To cure this default, you must pay all amounts due under the terms of your Note and Security Instrument, which includes any delinquent payments and regularly scheduled payments. . . . The total amount you must pay to cure the default stated above must be received by [date].  Failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument, sale of the property and/or foreclosure by judicial proceeding and sale of the property.

(Doc. 1-2 at 2; Doc. 1-3 at 2.)

On October 4, 2023, Plaintiffs filed this putative class action against Selene, alleging that these letters contain false and deceptive statements that violate the FDCPA (First Cause of

2

Action), the NCDCA (Second Cause of Action), the NCCAA (Third Cause of Action), and North Carolina common law of negligent misrepresentation (Fourth Cause of Action). (See Doc. 1 ¶¶ 66, 108-13, 115-19, 125-33, 135-39, 141-45, 150-58, 160-64, 180-83.) The complaint seeks the certification of a class of all North Carolina residential mortgagors whose loans were serviced by Selene who received a Final Letter "warning of acceleration of the home loan and/or commencement of foreclosure proceedings upon less than full payment of the 'amount due' or 'default amount,' within the applicable statute of limitations period." (Id. ¶¶ 72, 85.) Selene now moves to dismiss the complaint for failure to state a claim upon which relief can be granted. (Docs. 10, 11.) Plaintiffs responded in opposition (Doc. 17), and Selene replied (Doc. 20). The motion is now fully briefed and ready for resolution.

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

3

_Twombly_, 550 U.S. 544, 570, (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Id._  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," _Erickson v. Pardus_, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor.  _Ibarra v. United States_, 120 F.3d 472, 474 (4th Cir. 1997).  However, mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." _Iqbal_, 556 U.S. at 678.

**B.  Motion to Dismiss FDCPA Claims**

Plaintiffs allege that by sending the letters, Selene violated sections 1692e and 1692f of the FDCPA.  (Doc. 1 ¶¶ 66, 108-13, 115-19.)  Selene contends the letters only set out its legal rights and thus the complaint fails to state a claim under either section.  (Doc. 10 ¶ 3.)

**1.  <u>Section 1692e</u>**

Plaintiffs allege that Selene violated § 1692e in sending the letters by: (1) "utiliz[ing] false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes" (Doc. 1 ¶ 109); (2) "falsely represent[ing] its intention to

4

accelerate and foreclose on the homes of Plaintiffs and putative FDCPA Sub-Class members in an effort to induce the payment of additional funds" (id. ¶ 110); (3) "misrepresent[ing] its intentions and present[ing] Plaintiffs and putative FDCPA Sub-Class members with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure" (id. ¶ 111); (4) "threaten[ing] to take action, including acceleration and foreclosure, when it had no intention of taking such measures" (id. ¶ 112); and (5) "using false representations and deceptive means, including empty threats of acceleration and foreclosure" (id. ¶ 113). Selene contends that it accurately stated its rights and that Plaintiffs have failed to state a claim under § 1692e. (Doc. 10 ¶ 3.)

Section 1692e provides in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

To determine whether a communication is false, misleading, or

deceptive in violation of § 1692e, the court assumes the vantage of the "least sophisticated consumer." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394 (4th Cir. 2014)(quoting U.S. v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)). This is an objective standard that evaluates § 1692e claims "based upon how the least sophisticated consumer would interpret the allegedly offensive language." Id. at 394-95 (citation omitted). This standard is consistent with the consumer protection purpose of the law and protects the "gullible as well as the shrewd." Nat'l Fin. Servs., 98 F.3d at 136. But while the least sophisticated debtor standard protects naive consumers, "it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Id.

First, Selene argues that the letters are not actionable under § 1692e(5) because Selene's statement that failure to pay "may" result in acceleration is not a threat, but merely a statement of Selene's legal options to pursue the debt. (Doc. 11 at 10.) Selene argues that "[e]ven the least-sophisticated consumer understands that there is a difference between saying one 'may' do something and one 'will' do something." (Id.) Second, Selene argues that that the letters do not violate § 1692e(10) because the statement that failure to pay "may" result in acceleration is

6

not untrue on its face. (Id. at 12.) Third, it argues that to the extent the letters contain any misrepresentations, the misrepresentations are not material because the letters give debtors a longer notice period to cure the default than contractually required. (Id. at 12-13.)

In response, Plaintiffs contend that § 1692e prohibits statements claiming an action "can" or "may" occur when the person or entity making the statement does not have the present intention of following through with such action. (Doc. 17 at 10 (citing Brown v. Card Serv. Ctr., 464 F.3d 450, 451-52 (3d Cir. 2006)).) As for Selene's third argument, Plaintiffs respond that the false representations in the Final Letters are material because they lead the least sophisticated consumer to believe that he or she must pay the entire default amount to prevent acceleration and foreclosure, when in fact a lesser amount would suffice. (Doc 17. at 13-14.)

When viewed in the light most favorable to Plaintiffs, as required at this stage, the well-pleaded allegations of the complaint plausibly state a claim for relief under § 1692e. Plaintiffs allege that Selene "in the usual course of business" does not accelerate the loans of borrowers who fail to pay their total default amount before the date set out in the letters. (Doc. 1 ¶¶ 50-52.) Rather, Plaintiffs allege, to avoid acceleration borrowers need only pay an amount sufficient to bring their loans

7

less than 120 days past due.  (Id. ¶ 49.)  Thus, Plaintiffs have alleged a plausible claim that Selene's letters violate § 1692e(5) by threatening actions — acceleration, foreclosure, and sale — that it has no intention of taking, and to violate § 1692e(10) by deceptively representing these actions as possible consequences if the borrower fails to completely cure the default by the date specified.

Selene's first argument — that the "may result in acceleration" statement did not constitute a threat — is unpersuasive at this stage.  Selene distinguishes the facts alleged in the present complaint from those in Koepplinger v. Seterus, Inc., No. 1:17-CV-995, 2018 WL 4055268. (M.D.N.C. Aug. 14, 2018), report and recommendation adopted, No. 1:17-CV-995, 2018 WL 401738 (M.D.N.C. Sept. 14, 2018).  In Koepplinger, the letters threatened immediate acceleration:

> "If full payment of the default amount is not received by us ... on or before the Expiration Date, we will accelerate the maturity date. . . If you send only a partial payment, the loan still will be in default and we may keep the payment and still will accelerate the maturity date."

2018 WL 4055268 at 1 (citations omitted) (emphasis in original). By contrast, Selene argues, the Final letters merely "describe[] a potential avenue of recovery that Selene may pursue." (Doc. 20 at 4.)

Koepplinger is indeed distinguishable in this respect, but as Plaintiffs correctly point out, citing multiple cases (Doc. 17

8

at 10-11), couching a threatened course of action in conditional "may" language does not necessarily avoid liability under § 1692e(5), especially at this early pleading stage. For example, in Brown, the Third Circuit found that where legal action was never or very rarely taken, advising debtors that "Refusal to cooperate could result in a legal suit being filed" and "Failure on your part to cooperate could result in our forwarding this account to our attorney with directions to continue collection efforts," rather than using the word "will," sufficed to state a plausible claim. 464 F.3d at 451, 454. In doing so, the court rejected the conclusion that "could" neither stated nor implied any imminent legal action but merely stated or implied what was possible. Id. at 454-55. Similarly, in LeBlanc v. Unifund CCR Partners, the Eleventh Circuit found that a least sophisticated consumer could read the statement "If we are unable to resolve this matter within 35 days we may refer this matter to an attorney in your area for legal consideration" as a threat in violation of 1692e(5)), noting that use of words such as "if" and "may" did not safeguard the letter from being construed as a threat.[1] 601 F.3d 1185, 1196 (11th Cir. 2010). And in Gonzales v. Arrow Financial Services, LLC, the Ninth Circuit found that stating to a debtor that "a

---

[1] To be sure, the letter went on to state that "*If* suit is filed and *if* judgment is rendered against you, we *will* collect payment utilizing all methods legally available to us, subject to your rights below." LeBlanc, 601 F.3d at 1195 (emphasis in original).

9

negative credit report . . . may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations" was potentially a threat in violation of 1692e(5)) because it could lead the least sophisticated consumer to believe that failure to pay would result in negative credit reports. 660 F.3d 1055, 1063-64 (9th Cir. 2011) ("Conditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability."). Here, while Selene contends that "may" only sets out its possible legal rights (Doc. 11 at 10), the term could be construed by the least sophisticated consumer to suggest that the action referenced would be taken when, as alleged, Selene had no intention of doing so.

In addition, this statement plausibly alleges a violation of § 1692e(10). Selene's argument, that the "may result in acceleration" statement was true on its face, is unavailing. A jury could reasonably find this statement to be deceptive, even if technically true, because Selene allegedly does not take such actions even if less than the full deficiency is paid by the deadline. The statement suggests to the least-sophisticated consumer that Selene might take actions "that it had no intention of taking and has never or very rarely taken before." Brown, 464 F.3d at 455.

Finally, Selene's third argument regarding materiality also fails at this stage. A misrepresentation is material for purposes

of § 1692e if the information obscured by the misrepresentation "would have been important to the consumer in deciding how to respond to efforts to collect the debt." <u>Powell v. Palisades Acquisition XVI, LLC</u>, 782 F.3d 119, 127 (4th Cir. 2014). Here, Selene's representations allegedly obscured the fact that a partial payment would suffice to prevent acceleration. This is plausibly material to a consumer.

For these reasons, Selene's motion to dismiss Plaintiff's claims under § 1692e will be denied.

## 2. **Section 1692(f)**

Selene also contends that Plaintiffs have failed to state a claim under § 1692f, which prohibits the collection of debt by "unfair or unconscionable means." (Doc. 10 ¶ 3.) Selene argues that Plaintiffs' § 1692f claims do not allege any additional conduct beyond that underlying the § 1962e claims and should therefore be dismissed as duplicative. Plaintiffs respond that their § 1692f claim should be preserved in the alternative, in case Selene's conduct is later found not to violate § 1692e. (Doc. 17 at 14.)

Courts have taken various approaches to address overlapping claims under §1692e and §1692f. <u>Cf.</u> <u>Lembach v. Bierman</u>, 528 F. App'x 297, 304 (4th Cir. 2013) (dismissing an overlapping § 1692f claim along with the related, defective § 1692e claim); <u>Biber v. Pioneer Credit Recovery, Inc.</u>, 229 F. Supp. 3d 457, 472 (E.D. Va.

11

2017) (dismissing an overlapping § 1692f claim while advancing the related § 1962e claim); Koepplinger, 2018 WL 4055268, at *4 n.3. (declining to consider the procedural sufficiency of an overlapping § 1692f claim when the related § 1962e claim was procedurally sufficient to advance); Velez v. Healthcare Revenue Recovery Grp., LLC, No. 1:16-CV-377, 2017 WL 1476144 at *10-11 (M.D.N.C. Apr. 24, 2017) (declining to consider the procedural sufficiency of overlapping § 1692f and § 1692e claims when both were dismissed on substantive grounds).

Here, Plaintiffs' broader § 1692 claim survives Rule 12(b)(6) dismissal based on the alleged § 1692e violations discussed above. Thus, at this stage the court need not resolve whether the alleged § 1692f violations would be sufficient to independently support a claim, and the court will defer ruling on any such claim. See Koepplinger, 2018 WL 4055268, at *4 n.3 (M.D.N.C. Aug. 14, 2018). Selene's motion to dismiss Plaintiff's claims under § 1692f will therefore be denied without prejudice.

### 3. Plaintiff Joyner-Perry's FDCPA Claims

Separately, Selene asserts that Plaintiff Joyner-Perry cannot bring any FDCPA claim against it pursuant to § 1692a(6)(F)(iii), which excludes from the definition of "debt collector" any person collecting or attempting to collect a debt "to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." (Doc. 11 at 7.) Selene

12

contends, and Plaintiffs concede, that Selene was not a debt collector under the FDCPA as to Joyner-Perry because her loan was not in default at the time. (Id.; Doc. 17 at 8 n.5.) Notably, the FDCPA claims are brought on behalf of an "FDCPA Sub-Class" by Plaintiffs England and Meyers, with Plaintiff Joyner Perry not specifically mentioned. (Doc. 1 ¶85.) However, to the extent that generic references to "Plaintiffs" in the First Cause of Action could be construed to include Joyner-Perry (see id. ¶¶ 102-20), Selene's motion will be granted and Plaintiffs' First Cause of Action will be dismissed with respect to Plaintiff Joyner-Perry only.

### C. Motion to Dismiss NCDCA Claims

Plaintiffs also allege that by sending the letters, Selene violated the NCDCA as codified at N.C. Gen. Stat. § 75-51 (prohibiting debt collection "by means of any unfair threat, coercion, or attempt to coerce"), § 75-54 (prohibiting debt collection "by any fraudulent, deceptive or misleading representation"), and § 75-55 (prohibiting debt collection "by use of any unconscionable means"). (See Doc. 1 ¶¶ 66, 125-33, 135-39, 141-45.) Selene argues that these claims are deficient because Plaintiffs have not alleged two of the necessary elements of a deceptive trade practice claim under North Carolina law, namely (1) an unfair act and (2) proximately-caused injury. (Doc. 11 at 15 (citing Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644,

13

649 (E.D.N.C. 2014)).)

## 1. Unfair Act

Selene invokes its previous § 1692e arguments — i.e., that the "may result in acceleration" statement in the letters was neither a threat nor a misrepresentation — to assert that Plaintiffs have not alleged any "unfair act". (Doc. 11 at 14-15.) In response, Plaintiffs point to their previous counterarguments and cite Koepplinger, where federal FDCPA claims and state NCDCA claims jointly survived dismissal on a similar challenge. (Doc. 17 at 16 (citing 2018 WL 4055268, at *8).)

Selene offers no additional argument or authority to support a different finding here than under the FDCPA. Just as 15 U.S.C. § 1692e(5) prohibits "[t]hreats to take any action . . . not intended to be taken," N.C. Gen. Stat. § 75-51(7) prohibits "[t]hreatening to take any action not in fact taken in the usual course of business." Where 15 U.S.C. § 1692e(10) prohibits collecting debt by "any false representation or deceptive means," N.C. Gen. Stat. § 75-54 prohibits collecting a debt by "any fraudulent, deceptive or misleading representation." And 15 U.S.C. § 1692f and N.C. Gen. Stat. § 75-55 both forbid collecting a debt by "unconscionable means." Selene's arguments that the letters were neither threatening nor deceptive fail here for the same reasons discussed above, as Plaintiffs have plausibly alleged an "unfair act." Selene's motion to dismiss on this ground will

14

therefore be denied.

### 2.   <u>Proximate Cause and Injury</u>

Selene next argues that Plaintiffs have not alleged any injury other than entitlement to "actual and statutory damages." (Doc. 11 at 16.) In response, Plaintiffs note that the complaint alleges a variety of intangible harms, including "anxiety, stress, anger, frustration, and mental anguish" as well as "informational harms" and "violat[ions] of [Plaintiffs'] substantive rights to be free from unfair, abusive, and misleading debt collection communications." (Doc. 17 at 17 (citing Doc. 1 ¶ 68).)

As Plaintiffs correctly note (Doc. 17 at 17), NCDCA claims do not require a showing of actual injury. <u>Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.</u>, 853 S.E.2d, 698, 736 (N.C. 2021). Plaintiffs need only show "an informational injury based on alleged misrepresentations and misleading information." <u>McMillan v. Blue Ridge Cos., Inc.</u>, 866 S.E.2d 700 (N.C. 2021). This is precisely the type of injury Plaintiffs allege. (Doc. 1 ¶ 68.)

In sum, Plaintiffs have plausibly alleged a violation of the NCDCA that caused Plaintiffs to suffer informational harms of the sort contemplated by the statute. Thus, Selene's motion to dismiss Plaintiffs' claims under the NCDCA will be denied.

### 3.   <u>Joyner-Perry's NCDCA Claims</u>

As before, Selene argues that it is not a "debt collector" under the NCDCA with respect to Plaintiff Joyner-Perry, because

15

her mortgage was not in a state of default when Selene acquired it. (Doc. 11 at 16.) Selene argues that North Carolina courts interpreting the NCDCA would likely follow federal interpretations of the FDCPA to exclude loans acquired before default from the definition of "debt" and collectors of such loans from the definition of "debt collector." (See id.) Plaintiffs respond that the North Carolina Court of Appeals has explicitly declined to take such an approach. (Doc. 17 at 18 (citing Onnipauper LLC v. Dunston, 892 S.E.2d 487, 492 (N.C. Ct. App. 2023)) (rejecting federal interpretations of 'debt' as implying default).)

When construing a state statute, a federal court looks to the decisions of the highest court of the state. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005); Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020). If there are no governing opinions from the Supreme Court of North Carolina, the court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (internal quotation marks and citation omitted). In predicting how the highest court of a state would address an issue, the court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (internal quotation marks

16

omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Based on the decision of the North Carolina Court of Appeals in Onnipauper LLC, the court cannot say that the North Carolina Supreme Court would adopt a contrary approach. This is because, in part, the NCDCA definition of "debt collector," unlike the FDCPA definition, does not exclude persons collecting a loan acquired before default. Cf. N.C. Gen. Stat. § 75-50(3); 15 U.S.C. § 1692a(6)(F)(iii).[2] Accordingly, the motion to dismiss Plaintiff Joyner-Perry's claims under the NCDCA will be denied.

**D. Motion to Dismiss Claims under the NCCAA**

In the alternative, Plaintiffs allege that by sending the letters, Selene violated the NCCAA, as codified at N.C. Gen. Stat. § 58-70-95 (prohibiting debt collection "by means of any unfair threat, coercion, or attempt to coerce") and § 58-70-115 (prohibiting debt collection "by use of any unfair practices"). (Doc. 1 ¶¶ 66, 150-58, 160-64.) Plaintiffs acknowledge that they cannot sustain claims against Selene under both the NCCAA and NCDCA, because the NCDCA definition of "debt collector" excludes persons subject to the NCCAA, but request that both claims survive until discovery can reveal which statute best applies to Selene. (Doc. 17 at 19-20; ; see N.C. Gen. Stat. § 75-50(3).)

---

[2] Selene tacitly concedes this point in its reply, as it does not renew its request for dismissal of NCDCA claims against Joyner-Perry. (Doc. 20 at 7.)

17

Selene argues that it falls outside the NCCAA definition of "collection agency," which excludes "banks, trust companies, or bank owned, controlled or related firms" and "corporations or associations engaged in accounting, bookkeeping, or data processing services where a primary component of such services is the rendering of statements of accounts and bookkeeping services for creditors." (Doc. 11 at 17 (citing N.C. Gen. Stat. §§ 58-70-15(c)(2), (2a)).) Plaintiffs respond that Selene has not shown that it is a bank, a trust company, or related company falling under the § (c)(2) exception, nor has it shown that it is primarily engaged in accounting, bookkeeping or data processing services falling under the § (c)(2a) exception. (Doc. 17 at 20.)

The NCCAA defines "collection agency" as "a person directly or indirectly engaged in soliciting . . . delinquent claims of any kind owed or due or asserted to be owed or due the solicited person." N.C. Gen. Stat. § 58-70-15(a). Plaintiffs allege that Selene regularly contracts with third-party lenders to collect outstanding loans (i.e., debts), many of which are already in default (i.e., delinquent). (See Doc. 1 ¶¶ 21-25, 93.) Thus, they claim, Selene fits the NCCAA definition of a "collection agency."

Selene argues that "North Carolina courts have consistently held that mortgage servicers, like Selene, fall under the exemption to the definition of a collection agency under the statute." (Doc.

18

11 at 17-18 (citing <u>Williams v. HomEq Servicing Corp.</u>, 646 S.E.2d 381 (N.C. App. 2007); <u>Hacker v. Wells Fargo Bank, N.A.</u>, 2016 WL 5678341 (E.D.N.C. Sept. 30, 2016)).) But those cases involved mortgage servicers that were clearly excluded under § 58-70-15(c)(2). <u>Williams</u>, 64 S.E.2d at 424 ("The evidence in the record shows [Defendant] is the type of bank subsidiary meant to be exempt under § 58-70-15(c)(2)"); <u>Hacker</u>, 2016 WL 5678341 at *5 ("According to [Defendants], they each fall within [the § 58-70-15(c)(2)] exemption. . . . Plaintiff does not argue otherwise.) The present record, by contrast, is insufficient to permit a determination of whether Selene falls under this exemption. Therefore, because Selene plausibly qualifies as a "collection agency" under the NCCAA, its motion to dismiss Plaintiffs' claims under the NCCAA will be denied.

### E. Negligent Misrepresentation Claims

Last, Plaintiffs allege that Selene is liable for negligent misrepresentation under North Carolina common law. (Doc. 1 ¶¶ 180-83.) Selene argues that Plaintiffs failed to plausibly allege an injury or that any injury resulted from their reliance on the letters. (<u>See</u> Doc. 11 at 18-19.) In response, Plaintiffs point out that their complaint alleges generic "financial injury," "financial damage," "informational injury," and "anxiety, stress, anger, frustration, and mental anguish." (Doc. 1 ¶¶ 180-83, 68.) Plaintiffs also argue that reliance is a question for the

19

factfinder. (Doc. 17 at 21.)

Under North Carolina law, the tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care. <u>Raritan River Steel Co. v. Cherry, Bekaert & Holland</u>, 367 S.E.2d 609, 612 (N.C. 1988). North Carolina courts generally follow § 552 of the Restatement (Second) of Torts, which limits liability to "pecuniary loss." <u>See</u> <u>id.</u> at 614; <u>see</u> <u>also</u> <u>Oliver v. Brown & Morrison, Ltd.</u>, 2022 WL 1044647 (N.C. Sup. Ct. Apr 7, 2022). Plaintiffs argue that injury for purposes of a negligent representation claim "is not limited to financial or economic losses" and that intangible harms, such as emotional distress, anger, and frustration, can support a claim. (Doc. 17 at 22) (quoting <u>Ben-Davies v. Blibaum & Assocs., P.A.</u>, 695 F. App'x 674, 675-76 (4th Cir. 2017) (unpublished). However, they offer no relevant, published authority to support this contention. Selene responds that <u>Ben-Davies</u>, in addition to being unreported, is irrelevant, as it was resolved on standing grounds and never addressed negligent misrepresentation. (Doc. 20 at 8.)

The court agrees with Selene. Plaintiffs have not adequately alleged that they suffered pecuniary loss as a result of their reliance on the letters. Although Plaintiffs allege "financial injuries" and "financial harms," they do not provide any factual allegation of any amount, date, mechanism of injury, or any other

20

detail that could be used to render the claim plausible.  In short, their allegations amount to a "threadbare recital" of the element of pecuniary loss.  Iqbal, 556 U.S. at 678.  Because Plaintiffs have not adequately alleged an injury, the court need not consider the question of reliance.  Selene's motion to dismiss Plaintiffs' claims for negligent misrepresentation will therefore be granted.

### III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Selene's motion to dismiss (Doc. 10) is GRANTED as to claims brought under 15 U.S.C. § 1692 et seq. by Plaintiff Joyner-Perry only (Count One) and as to claims for negligent misrepresentation by all Plaintiffs (Count Four), which are DISMISSED, and is otherwise DENIED.


                                    /s/   Thomas D. Schroeder
                                  United States District Judge
September 16, 2025