IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:23-CV-00847-LCB-JEP

| | |
|---|---|
| CHRISTEL ENGLAND, KAREN MEYERS, and ANGELA JOYNER-PERRY, individually and on behalf of all others similarly situated, | ) |
| Plaintiffs, | ) |
| v. | ) |
| SELENE FINANCE, LP, | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF THE CLASS ACTION ..................... 1

II. STATEMENT OF FACTS ..................... 2

A. Selene sends two overlapping NC Final Letters through one automated, templated process. ..................... 2

B. Each NC Final Letter independently misrepresents Selene's ability and intention to accelerate and foreclose. ..................... 3

1. Selene's Internal Policy and Practice is to Not Follow the NC Final Letters' Threats and to Accept Partial Payments ..................... 5

2. Federal Law Prohibits Selene from Foreclosing As Represented in the NC Final Letters ..................... 6

C. Plaintiffs received the same template letters as every other class member. ..................... 7

III. QUESTION PRESENTED ..................... 7

IV. LEGAL STANDARDS FOR CLASS CERTIFICATION ..................... 7

V. ARGUMENT & AUTHORITIES ..................... 8

A. The Putative Classes Meet the Requirements of Rule 23(A) ..................... 8

B. The Proposed Classes Are Ascertainable From Selene's Records ..................... 12

C. The Proposed Classes Are So Numerous That Joinder Is Impracticable .. 12

D. There Are Questions of Law and Fact Common to the Class ..................... 13

1. The NCDCA Claims (N.C. Gen. Stat. § 75-50 et seq.) and the NCCAA Claims (N.C. Gen. Stat. § 58-70-1 et seq.) ..................... 13

2. The FDCPA Claims (15 U.S.C. §§ 1692e(5), 1692e(10) .. 14

E. Plaintiffs' claims are typical of class members' claims because the claims share materially similar, if not identical, facts ..................... 14

F. The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Class .......... 16

G. The Class Also Satisfies Rule 23(B)(3) .......... 17

1. Questions of Law or Fact Predominate Over Individual Ones. .......... 17

2. The Class Action Device is the Superior Method of Adjudicating These Controversies. .......... 19

CONCLUSION .......... 21

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT .......... 22

CERTIFICATE OF SERVICE .......... 22

## TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 17, 18

*Avalon Ctr. Inv. Co. v. Com. Defeasance, LLC*,
No. 3:08-CV-00535-W, 2010 WL 2176072 (W.D.N.C. May 21, 2010) .......... 8

*Bartlett v. Heibl*,
128 F.3d 497 (7th Cir. 1997) .......... 14

*Bicking v. Mitchell Rubenstein & Assocs., P.C.*,
No. 3:11CV78-HEH, 2011 WL 5325674 (E.D. Va. Nov. 3, 2011) .......... 10, 18

*Branch v. Gov't Employees Ins. Co.*,
323 F.R.D. 539 (E.D. Va. 2018) .......... 8

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331, 337 (4th Cir. 1998) .......... 15

*Butela v. Midland Credit Mgmt., Inc.*,
341 F.R.D. 581 (W.D. Pa. 2022) .......... 12

*Custer v. Dovenmuehle Mortg., Inc.*,
813 F. Supp. 3d 530 (M.D.N.C. 2025) .......... 9, 20

*Cruz v. Selene Fin., LP*,
No. 23-14297-CIV, 2024 WL 5374001, at *1 (S.D. Fla. Nov. 21, 2024) .......... 10

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*,
375 F.2d 648 (4th Cir. 1967) .......... 12

*Deiter v. Microsoft Corp.*,
436 F.3d 461, 467 (4th Cir. 2006) .......... 16

*Dominguez v. Selene Fin., LP*,
No. 23-CV-06225-JSC, 2025 WL 2624870 (N.D. Cal. Sept. 11, 2025) .......... 19

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) .......... 12, 13

*Fariasantos v. Rosenberg & Assocs., LLC*,
303 F.R.D. 272 (E.D. Va. 2014) .......... 20

*Foster v. CEVA Freight, LLC*,
272 F.R.D. 171 (W.D.N.C. 2011) .......... 12

*Gore v. Myrtle/Mueller*,
362 N.C. 27 (2007) .......... 11

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) .......... 17, 20

*Hewlett v. Premier Salons Int'l, Inc.*,
185 F.R.D. 211 (D. Md. 1997) .......... 19

*In re A.H. Robins Co., Inc.*,
880 F.2d 709 (4th Cir. 1989) .......... 19

*In re Zetia (Ezetimibe) Antitrust Litig.*,
7 F.4th 227 (4th Cir. 2021) .......... 12

*Koepplinger v. Seterus, Inc.*,
No. 1:17CV995, 2020 WL 2063416 (M.D.N.C. Apr. 29, 2020) .......... 11, 20

*Krakauer v. Dish Network L.L.C.*,
311 F.R.D. 384 (M.D.N.C. 2015) .......... 8, 17, 20

*McMillan v. Blue Ridge Cos., Inc.*,
379 N.C. 488, 866 S.E.2d 700 (2021) .......... 9, 11, 13, 18

*Morgan v. Credit Adjustment Bd.*,
999 F. Supp. 803 (E.D. Va. 1998) .......... 14

*Russell v. Absolute Collection Servs., Inc.*,
763 F.3d 385 (4th Cir. 2014) .......... 14, 18

*Sherrod v. Ins. Ass'n*,
139 N.C. 167 (1905) .......... 11

*Soutter v. Equifax Info. Servs., LLC*,
498 F. App'x 260 (4th Cir. 2012) ........ 15

*Spurlock v. Wexford Health Sources, Inc.*,
175 F.4th 232 (4th Cir. 2026) ........ 15

*Stafford v. Bojangles' Restaurants, Inc*,
123 F.4th 671, 682 (4th Cir. 2024) ........ 9

*Stillmock v. Weis Markets, Inc.*,
385 F. App'x 267 (4th Cir. 2010) ........ 8

*Talbott v. GC Servs. Ltd. P'ship*,
191 F.R.D. 99 (W.D. Va. 2000) ........ 10

*Thomas v. FTS USA, LLC*,
312 F.R.D. 407 (E.D. Va. 2016) ........ 18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........ 17

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 8

*Woodard v. Online Info. Servs.*,
191 F.R.D. 502 (E.D.N.C. 2000) ........ 10

*Yates v. NewRez LLC*,
686 F. Supp. 3d 397 (D. Md. 2023) ........ 12

Statutes

15 U.S.C. § 1692k(a)(2)(B) ........ 20

15 U.S.C. §§ 1692 ........ 2

15 U.S.C. §§ 1692e(5), 1692e(10) ........ 14

N.C. Gen. Stat. § 45-102 ........ 4

N.C. Gen. Stat. §§ 58-70-1 through 58-70-155 ........ 2, 13

N.C. Gen. Stat. §§ 58-70-90 to 58-70-130 ........ 13

N.C. Gen. Stat. §§ 75-50 through 75-56 .......... 2, 13

N.C. Gen. Stat. §§ 75-56, 58-70-130 .......... 20

N.C. Gen. Stat. §§ 75-51, 75-54, 75-55 .......... 13

Rules

Fed. R. Civ. P. 23(a)(3) .......... 15

FED. R. CIV. P. 23(a)(4) .......... 16

Fed. R. Civ. P. 23(b)(3)(A) .......... 20

Fed. R. Civ. P. 23(b)(3)(D) .......... 20

Federal Rules of Civil Procedure 23(a) and 23(b)(3) .......... 7

Rule 23 .......... 10, 12

Rule 23(a) of the Federal Rules of Civil Procedure .......... 8, 16

Rule 23(b) .......... 8

Rule 23(b)(3) .......... 17, 19, 20

Rule 23(c)(4) .......... 20

Regulations

12 C.F.R. § 1024.41(f)(1)(i) .......... 2, 7, 13

Plaintiffs Christel England, Karen Meyers, and Angela Joyner-Perry (collectively "Plaintiffs") respectfully move for an Order certifying this case as a class action on behalf of North Carolina borrowers whom Selene Finance, LP ("Selene") sent "NC Final Letters" deceptively threatening acceleration and foreclosure of their mortgages by stating:

## I. INTRODUCTION

Selene, a residential mortgage servicer, uses automated software to send every North Carolina borrower who falls at least 45 (later 65)[1] days in default two overlapping template letters at approximately the same time: a "NOTICE OF DEFAULT AND INTENT TO ACCELERATE" ("NOD Letter") (Exhibit A)), and the "North Carolina Disclosure" (Exhibit B) (the NOD Letter and the North Carolina Disclosure are collectively "NC Final Letters"; Exhibit C, Deposition of Selene's 30(b)(6) Representative ("Selene Dep.") 26:6–19; 59:3–14; 61:20–62:22; 65:10–67:3, 148:4–15. Each letter delivers the same false ultimatum. In the NOD Letter, Selene demands the entire default amount by a date certain and threatens acceleration, sale, and foreclosure if the borrower does not pay all of it by that date. Exhibit A. Selene's North Carolina Disclosure threatens that if the account is not brought current within 45 days, Selene "will, without further demand," accelerate the loan, declare the total balance due, and initiate foreclosure. Exhibit B.

Selene's NC Final Letters' threats are false because Selene's internal policies prohibit referring any loan to foreclosure before the borrower is 121 days in default, and federal law forbids any foreclosure filing until a borrower is more than 120 days in default.

[1]In October 2023, as discussed *infra*, Selene changed the timing of when it sends the NC Final Letters.

Selene Dep. 102:4–7;117:1–11;118:4–7;118:13–16; 125:11–16; 126:4–9; 134:1–3; 158:1–7; 12 C.F.R. § 1024.41(f)(1)(i); ECF No. 21 September 16, 2025 Court Order ("September Order") at 8. Selene also does not consider a loan "accelerated" until the foreclosure lawsuit is filed. Selene Dep. 74:21–75:5; 158:8–24; 181:1–8. Yet, Selene does not disclose this. As a result, Selene's NC Final Letters violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and either the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §§ 75-50 through 75-56, or the North Carolina Collection Agencies Act ("NCCAA"), N.C. Gen. Stat. §§ 58-70-1 through 58-70-155.

Accordingly, Plaintiffs seek certification of two classes, as fully described *infra*: (1) a North Carolina State Law Class, consisting of all North Carolina borrowers who received a NOD Letter and/or a North Carolina Disclosure during the applicable limitations period, and (2) an FDCPA Sub-Class, consisting of North Carolina borrowers who were in default when Selene began servicing their loans and who received either (or both) of the NC Final Letters.

## II. <u>STATEMENT OF FACTS</u>

### A. Selene sends two overlapping NC Final Letters through one automated template process.

Selene acquires loans from investors and other financial institutions, and many of those loans, if not the majority, are in default when Selene acquires servicing rights. See ECF No. 29 Selene Answer ("Ans.") ¶¶ 24, 27, 32, 37. As part of its collection services, Selene sends demand letters, including NC Final Letters. Ans. ¶¶ 31, 36, 47. Selene uses an automated dashboard that tracks all loan statuses and delinquency data and compiles the

list of borrowers to receive the NC Final Letters based upon a "demand letter matrix." Selene Dep. 23:24–24:22; 25:1–13; 28:12–29:12; 30:2–6; 31:24–32:7; 65:14–66:8; 90:20–91:1. Based upon Selene's automated tracking process, Selene sends the NOD Letter to every North Carolina borrower who is 45 (later 65)[2] days behind on their mortgage. *Id.* 26:6–19; 58:17–59:14; 61:20–62:22; 65:10–67:3, 148:4–15; 172:17–21,175:2–4. Pursuant to the same timeline at either 45 (or later 65 days) Selene also sends the same borrower the North Carolina Disclosure. *Id.* 59:3–14, 60:10–13; 62:5–22, 65:10–13. Both letters are generated the same way, from a template (Selene form DM018 or DM001)(Exhibits A,B) whose bracketed fields includes the borrower's name, loan number, and property address populated from Selene's automated systems; apart from those fields, every recipient gets the same letter. *Id.* 65:14–66:12; 98:5–16.

### B. Each NC Final Letter independently misrepresents Selene's ability and intention to accelerate and foreclose.

First, Selene's NOD Letter demands the entire default amount by a date certain and threatens acceleration and foreclosure if the borrower does not pay all of it by stating:

---

[2]In October 2023, shortly after filing this case, Selene changed the timing of the NC Final Letters)) from 45 days past due to 65 days past due and revised the operative language from "Selene **will**, without further demand, accelerate the maturity date of the account and declare the total balance immediately due and payable and foreclosure proceedings will be initiated at that time" to "Selene **may**, without further demand, accelerate the maturity date of the account and declare the total balance immediately due and payable and foreclosure proceedings will be initiated at that time, as permitted by applicable state and federal law." Exhibit A. These changes are immaterial because the 45-day cure deadline within the letter remains unchanged, and Selene confirmed the math doesn't change after October 2023 because on day 111, after the letters' deadline has expired with the borrower having paid nothing, Selene will not accelerate, will not declare the total balance due, and will not initiate foreclosure. Selene Dep. 74:7–75:11. Selene also confirmed the process for generating the letters hasn't changed. *Id.* 148:16-23.

> To cure this default, you must pay all amounts due under the terms of your Note and Security Instrument. . . . The total amount you must pay to cure the default stated above must be received by [date]. Failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument, sale of the property and/or foreclosure by judicial proceeding and sale of the property.
>
> If you have not cured the default within forty-five (45) days of this notice, Selene, at its option, may require immediate payment in full of all sums secured by your Security Instrument without further demand or notice, and foreclose the Security Instrument by judicial proceeding and sale of the property and/or invoke the power of sale or any other remedies permitted by applicable law . . .

*E.g.,* Exhibit A. (NOD Letter to Plaintiff England, Jan. 12, 2022). The NOD Letter also warns that a partial payment will not stop Selene: "If you send an amount less than the full amount due, Selene can apply the amount received to your account and proceed with the applicable foreclosure proceedings, without further notice to you." *Id.*

Prior to October 2023[3], Selene's North Carolina Disclosure stated:

> If your account is not brought current within forty-five (45) days [of] the date of this letter, Selene will, without further demand, accelerate the maturity date of the account and declare the total balance immediately due and payable and foreclosure proceedings will be initiated at that time.[4]

[3]See Footnote 2 *supra*.

[4] Selene's template presents the North Carolina Disclosure as a notice the State compels: "Under North Carolina State Law, we are required to send you this notice to inform you that you are at risk of losing your home." Exhibit B.The statute it invokes requires nothing of the kind. N.C. Gen. Stat. § 45-102 directs servicers to send a notice "to inform the borrower of the availability of resources to avoid foreclosure" — an itemization of past-due amounts and charges, a statement that the borrower "may have options available other than foreclosure," and contact information for the servicer, HUD-approved counseling agencies, and the State Home Foreclosure Prevention Project — "[a]t least 45 days prior to the filing of a notice of hearing" in a foreclosure proceeding. Nothing in § 45-102 requires or permits a threat that Selene "will, without further demand, accelerate" the loan; the statute's 45-day period is a pre-filing waiting period that protects the borrower, not a

Selene Dep. 65:3–67:25; Exhibit B (North Carolina Disclosure). Selene confirmed the "45 days" cure period is not adjusted because it "is a template, so everybody gets a letter that says '45 days.'" *Id.* 68:20–23; 70:5–9.

### 1. *Selene's Internal Policy and Practice is to Not Follow the NC Final Letters' Threats and to Accept Partial Payments*

Each NC Final Letter is false in the same way: they threaten acceleration and foreclosure on a deadline that does not exist. Selene Dep. 170:20–171:3. A borrower need not receive both letters to be misled because either letter, by itself, delivers the same false ultimatum: become completely current by the deadline or the loan will be accelerated and foreclosure will begin. Selene Dep. 73:17–74:5.

Despite these representations, Selene conceded it does not do what it threatens: at 90 days past due — when the letters' 45-day deadlines expire and if a borrower fails to make a payment— Selene would **not** 1) accelerate the maturity date, 2) declare the total balance immediately due and payable, or 3) initiate foreclosure proceedings. Selene Dep. 67:4–25; 70:11–71:12; 71:23–77:5. Selene's internal Foreclosure Referral Review and Approval Process prohibits the referral of any loan to foreclosure before the borrower reaches 121 days of delinquency and referral "never occur[s] before 120." Selene Dep. 31:5–9; 48:17–18; 70:21–71:12; 117:1–119:1; 125:11–16; 126:4–9; 134:1–3; 137:1–10, 168:21–169:17, 170:20–171:3; 180:25–181:23. A borrower could pay nothing before the NC Final Letters' deadline and still avoid foreclosure by making a payment before 120 days because

---

cure-or-acceleration deadline. Exhibit B. Selene took a consumer-protection disclosure mandated by state law and uses it to deliver an additional unlawful threat.

Selene doesn't refer a loan to foreclosure until 120/121 days. *Id*. Since at least June 2019, Selene's policy states: "After the loan becomes 121 days delinquent[,] Selene will review a loan for foreclosure referral in accordance with all investor and insurer guidelines, state and federal law, and any active foreclosure avoidance programs that may be active at the time of referral review." See Exhibit J; Selene Dep. 116:22–119:1; 123:14–124:14. "For payment defaults, Selene will refer a loan to foreclosure no earlier than 121 days delinquent or when the loan becomes eligible for referral under applicable law." Exhibit E.

Nor must a borrower become "current" — a term Selene agreed means having "made all your payments" — to avoid the threatened outcomes. Selene Dep. 73:17–23. A borrower who received the NC Final Letters "could make a single payment, or . . . pay nothing, and none of these things in this letter would happen." *Id.* 35:25–36:14; 73:24–74:5; 75:6–11. Indeed, contrary to the NOD Letter's assertion that partial payments will not stop foreclosure, Selene maintains a uniform practice of accepting partial payments that bring a loan to within 60 days current, in which case the borrower avoids referral to foreclosure entirely. *Id.* 42:2–6; 44:3–48:18; 72:19–74:5; 167:8–171:3. Yet, neither letter informs borrowers their loan will not be accelerated if a partial payment is made that brings the loan to less than 120 days behind. *See generally* Exhibits A and B.

### 2. *Federal Law Prohibits Selene from Foreclosing As Represented in the NC Final Letters*

Similarly, federal law prohibits mortgage servicers from making the first filing required for any judicial or non-judicial foreclosure process unless the borrower is more than 120 days behind on payments. 12 C.F.R. § 1024.41(f)(1)(i). This prohibition applies

to Selene's servicing of all residential mortgage loans, regardless of the borrower's state of residence, the identity of the investor, or the particular terms of the loan. Selene Dep. 169:9–10. The federal 120-day floor and Selene's 121-day internal policy establish a gap of at least 30 days between the earliest point Selene's threatened actions could lawfully or actually be taken and Selene's deadline. Selene Dep. 67:10–68:23.

### C. Plaintiffs received the same NC Final Letters as every other class member.

Selene sent Plaintiffs and the class members the same NC Final Letters generated by the same automated process. Compl. ¶¶ 27, 29, 31, 32, 34, 36; Selene Dep. 140:10–25; Exhibits A, B, E; September Order at 2; *see Def.'s Resp. to Pls.' 1st Interrogs.* Nos. 7, 8, Exhibit D. There is no distinction between Plaintiffs'[5] letters and any other class members' because Selene produced the NC Final Letters sent to North Carolina borrowers from 2019 to the present, and Selene can query its systems to identify every recipient of these templates. Selene Dep. 65:10–66:12; 141:21–142:4; 207:20–24. Selene also produced a list of NC recipients of NOD Letters, and agreed it can also identify every instance in which the North Carolina Disclosure was sent. Exhibit F; Exhibit D: No. 13; RPD Nos. 12, 19; Selene Dep. 141:21–142:10; 204:9–205:8.

## III. QUESTION PRESENTED

Whether this matter is suitable as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3)?

## IV. LEGAL STANDARDS FOR CLASS CERTIFICATION

[5] The only difference is that Plaintiff Joyner-Perry's loan was not in a state of default, and she is not representing the FDCPA Sub-Class.

To obtain class certification, a plaintiff must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and the case must also fall within at least one of the types of class actions defined in Rule 23(b). *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 269 (4th Cir. 2010); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 388 (M.D.N.C. 2015), aff'd, 925 F.3d 643 (4th Cir. 2019). The Court must undertake a "rigorous analysis" as to each requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (cleaned up). Because of the analysis required by *Dukes*, "the district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Branch v. Gov't Employees Ins. Co.*, 323 F.R.D. 539, 545 (E.D. Va. 2018). Although this analysis may "overlap into the merits of the underlying case," the "likelihood of the plaintiff's success on the merits . . . is not relevant to the issue of whether certification is proper." *Id*. "In determining whether to certify a class action, a court should interpret Rule 23 in such a manner as to promote justice and judicial efficiency." *Avalon Ctr. Inv. Co. v. Com. Defeasance, LLC*, No. 3:08-CV-00535-W, 2010 WL 2176072, at *3 (W.D.N.C. May 21, 2010) (cleaned up).

## V. ARGUMENT & AUTHORITIES

### A. The Putative Classes Meet the Requirements of Rule 23(A).

Plaintiffs seek certification of two classes: a North Carolina State Law Class asserting claims under the NCDCA and the NCCAA, and an FDCPA Sub-Class asserting claims under the Fair Debt Collection Practices Act. Compl. ¶¶ 72, 85. The proposed Classes are defined as:

> **North Carolina State Law Class (NCDCA and NCCAA):** All North Carolina residential mortgagors to whom Selene sent a NC Final Letter, defined as a NOD Letter and/or a North Carolina Disclosure, or any substantially similar form, between October 4, 2019 and the date an order approving class notice is entered.[6] This class is represented by Plaintiffs Christel England, Karen Meyers, and Angela Joyner-Perry.[7]
>
> **FDCPA Sub-Class:** All North Carolina residential mortgagors whose servicing rights were acquired by Selene when their loan was in a state of delinquency or default, and to whom Selene sent a NOD Letter and/or a North Carolina Disclosure, or any substantially similar form, between October 4, 2022 and the date an order approving class notice is entered. This sub-class is represented by Plaintiffs Christel England and Karen Meyers only.

Courts in North Carolina and the Fourth Circuit routinely certify classes challenging uniform debt-collection form letters because the legality of the letters' language is common to all and there is no requirement the recipients rely upon the letters if there is a misrepresentation in the letters. *See McMillan v. Blue Ridge Cos., Inc.*, 379 N.C. 488, 497–99, 866

---

[6] Although Plaintiffs' Complaint originally measured the class period to "the applicable statute of limitations period," Compl. ¶¶ 72, 85, "[i]t is the better practice to define the class by date, not by general reference to the statute of limitations." *Custer v. Dovenmuehle Mortg., Inc.*, 813 F. Supp. 3d 530, 541 (M.D.N.C. 2025). Thus, the proposed start dates reflect the governing limitations periods four years before filing for the NCDCA and NCCAA claims (October 4, 2019) and one year before filing for the FDCPA claims (October 4, 2022). Further, defects or imprecision in a pleaded class definition "can and often should be solved by refining the class definitions," *Stafford*, 123 F.4th at 682, and courts in this circuit certify classes whose definitions differ from those proposed in the complaint or even in the certification motion itself. *See Lewis v. EquityExperts.org, LLC*, No. 5:22-CV-302-FL (E.D.N.C. Jan. 6, 2025) (certifying letter-based classes of the court's own definition) and (May 2, 2025) (sua sponte refinement of the class definitions "is not, in itself, a basis for reconsideration" and granting leave to amend the complaint to conform to the certified classes) (attached as Exhibits K and L).

[7] Unlike the FDCPA, the NCDCA definition of 'debt collector' does not exclude persons collecting a loan acquired before default. *See* September Order at 17-18.

S.E.2d 700, 707–09 (2021) (affirming certification of an NCDCA class and holding "the collection letters need not have caused each class member a personal, factual injury based on his or her subjective reaction to it" because the defendant's "procedures . . . were admittedly uniform," rendering "tenant-specific factual findings . . . unnecessary"); *Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505-07 (E.D.N.C. 2000) (certifying FDCPA class because "all class members' claims are grounded in an identical practice and legal theory—the mailing of improper debt-collection letters"); *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 103, 105 (W.D. Va. 2000) ("[m]ailing a standardized collection letter satisfies commonality" and "common questions predominate because of the standardized nature of [the defendant's] conduct"); *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11CV78-HEH, 2011 WL 5325674, at *3 (E.D. Va. Nov. 3, 2011) (certifying class of letter recipients; "if the [notice] was unlawful as to one, then it was unlawful as to all," and FDCPA "liability does not require showing that [the] consumer read or received the dunning letter").

In *Cruz*, the Southern District of Florida certified a Florida State Law Class and an FDCPA Sub-Class finding every Rule 23 requirement satisfied because Selene's "Default Notices sent to individual loan holders are materially identical . . . were generated by [Selene] through an entirely automated process; and were sent . . . pursuant to [Selene's] uniform policy." 2024 WL 5374001, at *8. The *Cruz* letters are identical in substance to the NC Final Letters. *Compare* Exhibit G with Exhibits A, B. The only difference between this matter and *Cruz* is that this case involves a second similar North Carolina letter, North Carolina borrowers, and North Carolina statutory claims. These facts strengthen the case

for certification because *McMillan* establishes that NCDCA claims are ideally suited for class treatment. 379 N.C. at 496–501.[8]

Any suggestion by Selene that receipt of the letters presents an individualized question is legally irrelevant because North Carolina recognizes that for "mail properly addressed and stamped, the law presumes the addressee received it." *Sherrod v. Ins. Ass'n*, 139 N.C. 167, 169 (1905); *see also Gore v. Myrtle/Mueller*, 362 N.C. 27, 48 (2007) ("[T]he law is that evidence of the mailing of a letter, properly addressed and with proper postage, raises a rebuttable presumption that the letter was received by the intended recipient." (citations omitted)). Because Selene mails each NC Final Letter to every borrower through the same automated process, by both first-class and certified mail, Selene Dep. 142:8–143:10, proof of that uniform mailing raises the presumption of receipt on a class-wide basis, so the question is answered with common evidence rather than borrower-by-

[8] In *Koepplinger v. Seterus, Inc.*, No. 1:17CV995, 2020 WL 2063416, at *1 (M.D.N.C. Apr. 29, 2020), report and recommendation adopted sub nom, *Koepplinger*, No. 1:17-CV-995, 2020 WL 5705915 (M.D.N.C. Aug. 26, 2020) the court certified the FDCPA class challenging Seterus' letters, but it declined to certify the parallel NCDCA class under the premise that individual issues regarding each class member's subjective reliance and factual injury predominated. *Id*. However, *Koepplinger* was decided over a year prior to the North Carolina Supreme Court's 2021 decision in *McMillan v. Blue Ridge Cos., Inc*. which expressly rejected the premise relied upon in *Koepplinger* that individualized proof of subjective reliance or factual injury is required in NCDCA class actions. *McMillan* held that uniform, deceptive collection letters inflict "informational injury" and a "class-wide deprivation of statutory rights" sufficient to support class-wide liability and statutory damages without individual, tenant-specific factual findings. Consequently, *Koepplinger's* rationale for denying NCDCA class certification has been superseded by controlling North Carolina Supreme Court precedent on the NCDCA.

borrower testimony. *See Butela v. Midland Credit Mgmt., Inc.*, 341 F.R.D. 581, 594–95, 602–03 (W.D. Pa. 2022) ("proof of actual receipt is not a prerequisite to liability").

### B. The Proposed Classes Are Ascertainable From Selene's Records

Rule 23 requires that class members be "readily identifiable" by reference to objective criteria, such that it is "administratively feasible" for the court to determine membership without "extensive and individualized fact-finding or 'mini-trials.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). *Cruz* found Selene's recordkeeping system "ascertainable and readily defined." *Cruz*, at *7. Courts reject attempts to defeat ascertainability by alleging the need for manual file-by-file reviews when electronic databases track the necessary objective criteria. *See Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 404, 407 (D. Md. 2023). Identifying members of both proposed classes is straightforward because Selene produced a list of the North Carolina borrowers who received the letters, the amount of NC Final Letters each borrower received, and whether the borrower was onboarded in a state of default for the FDCPA subclass. Selene Dep. 25:1–13; 25:24–26:25; 137:13–139:8; 141:21–142:10; 204:9–22; 205:5–8; Def.'s Resp. to Pls.' First Set of Reqs. for Adm., No. 3.

### C. The Proposed Classes Are So Numerous That Joinder Is Impracticable

Numerosity is presumed and joinder is deemed impracticable where a class exceeds forty members. *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227 (4th Cir. 2021); *Mantha v. QuoteWizard.com*, LLC, No. 19-12235 (D. Mass. Aug. 16, 2024) (numerosity satisfied with over 66,000 members); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967); *Foster v. CEVA Freight, LLC*, 272 F.R.D. 171, 174

(W.D.N.C. 2011) ("[A]t least 1,000" class members). There are at least 2,569 North Carolina borrowers who received the letters. See Exhibit F; Selene Dep. 142:1–10. Each letter, moreover, goes out by both regular and certified mail — four copies per letter to a married couple. Selene Dep. 142:8–143:10.

### D. There Are Questions of Law and Fact Common to the Class

Commonality requires at least one question "capable of classwide resolution" whose "determination . . . will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *EQT*, 764 F.3d at 360. The central question is: whether Selene's NC Final Letters contain false, deceptive, or misleading representations, judged under the objective "least sophisticated consumer" standard, when Selene's own policies and federal law prohibit the threatened acceleration and foreclosure. *See* Selene Dep. 69:20–71:12; 73:24–74:5; 12 C.F.R. § 1024.41(f)(1)(i). This question can be asked once and answered once for every class member, whether a borrower received one letter or both.

#### 1. *The NCDCA Claims (N.C. Gen. Stat. § 75-50 et seq.) and the NCCAA Claims (N.C. Gen. Stat. § 58-70-1 et seq.)*

The NCDCA and NCCAA claims rest on Selene's threats to take action it did not intend to take, its use of deceptive representations to collect a debt, and its use of unconscionable means of collection. N.C. Gen. Stat. §§ 75-51, 75-54, 75-55; N.C. Gen. Stat. §§ 58-70-90 to 58-70-130. Under *McMillan*, these claims do not require individualized proof of subjective injury; the injury is "a class-wide deprivation of statutory rights." 379 N.C. at 497. Every element thus turns on Selene's uniform policies and

template NC Final Letters, both of which are established by common evidence. Selene Dep. 68:1–23; 123:22–124:14; 126:4–9.

### 2. *The FDCPA Claims (15 U.S.C. §§ 1692e(5), 1692e(10))*

The FDCPA claims require Plaintiffs to prove Selene is a "debt collector," that each letter was a communication made in connection with the collection of a debt, and that the letter contained a false, deceptive, or misleading representation including a threat to take action that cannot legally be taken or is not intended to be taken, judged under the objective "least sophisticated consumer" standard. 15 U.S.C. §§ 1692e(5), 1692e(10); *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394–95 (4th Cir. 2014). While Selene denied it is a "debt collector," Selene's status as a debt collector is a single common question that will be resolved the same way for every class member. *See* Ans. ¶ 17. Whether the NC Final Letters are false or misleading is measured objectively against its text and not any borrower's subjective reaction so no proof of reliance or actual confusion is required. September Order at 4–5; *Talbott*, 191 F.R.D. at 103 ("a plaintiff need not actually read the letter" and "whether a [class member] actually received the letter is not dispositive," collecting *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997) (reading is not an element of the FDCPA violation), and *Morgan v. Credit Adjustment Bd.*, 999 F. Supp. 803, 805 (E.D. Va. 1998) (FDCPA liability does not require showing the consumer read or received the dunning letter)).

## E. Plaintiffs' claims are typical of class members' claims because the claims share materially similar, if not identical, facts.

A class representative's claims or defenses must be "typical" of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Typicality demands "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Soutter v. Equifax Info. Servs.*, LLC, 498 F. App'x 260, 264 (4th Cir. 2012). Nonetheless, typicality does not require a class representative's claims be perfectly identical to the class members' claims. *See, e.g., Broussard*, 155 F.3d at 337; *Deiter*, 436 F.3d at 467; *Soutter*, 498 F. App'x at 265. Selene sent each Plaintiff the same letters, generated by Selene's system, containing the same threatening language, as every other class member. Selene Dep. 64:20–66:12. The presence of any unique defense does not undermine typicality where, as here, every claim arises from the same uniform conduct. *Cruz*, at *9-10.

This same injury also establishes each Plaintiff's Article III standing. Each named Plaintiff received at least one of Selene's standardized letters falsely threatening imminent acceleration and foreclosure, Compl. ¶¶ 31, 36; Exs. 5, 6, and each suffered the same concrete harm the class shares: the deprivation of statutory protections against deceptive debt collection, emotional distress from the threat of losing their home, and the financial pressure the letters were designed to exert. Compl. ¶¶ 59, 60, 62–65. Where the class representatives have standing, "the case is justiciable and the proponent of the class suit need not demonstrate that each class member has standing." *Spurlock v. Wexford Health Sources, Inc.*, 175 F.4th 232, 251 (4th Cir. 2026). Plaintiff England borrowed money from her daughter to make a payment after receiving an NC Final Letter because it was her understanding "there was a foreclosure process going on" when she received the NC Final

Letter demanding she pay "X amount by [a] certain date . . . or they were going to sell the house."[9] England Dep. 100:9–25;101:19–23 (Exhibit I). That is the same payment-in-response-to-a-false-deadline injury the Classes share, and it is established by Selene's uniform letters, policies, and systems rather than by borrower-specific proof.[10]

### F. Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Class

The final component of Rule 23(a) requires the "representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This prerequisite is met when: (1) the named plaintiff[s] [have] interests common with, and not antagonistic to, the Class' interests; and (2) the plaintiff[s'] attorney is qualified, experienced and able to conduct the litigation. *Krakauer*, 925 F.3d at 654. Plaintiffs' Counsel are experienced in class action work as well as consumer protection issues under the NCDCA, NCCAA and the FDCPA and have been approved as class counsel in numerous cases. *see* Exhibit M & N, Declaration of Scott C. Harris ("Harris Decl.") at 28

Further, Plaintiffs demonstrated their commitment to the Classes by providing all information and documents requested, sitting for depositions,[11] and participating in the

[9]Additionally, Plaintiff Meyers received an NC Final Letter and she made a payment to Selene by borrowing funds from family to bring her loan current — the same payment-in-response-to-a-false-deadline injury the Classes share. *See* Exhibit H 134:1-13.
[10] While Plaintiff England could not always recall receiving the letters, this matter is judged by the "least sophisticated consumer" standard, and Selene's own certified-mail return receipts bear her signature acknowledging delivery, including her signature accepting delivery on August 9, 2023 of the mailing enclosing the August 1, 2023 NOD Letter. See Exhibit O; see also Exhibit P.
[11] Plaintiffs England and Meyers have been deposed, and Plaintiff Joyner-Perry is in the process of being rescheduled.

litigation. Plaintiffs do not have interests antagonistic to those of the proposed Class and have cooperated with counsel. Harris Decl. at 9. The Fourth Circuit disapproves attacks on adequacy premised on a representative's lack of detailed knowledge of the litigation. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003).

**G. The Class Also Satisfies Rule 23(b)(3).**

Under Rule 23(b)(3), an action that satisfies the threshold prerequisites for certification may be maintained as a class action if the court finds that: (1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs' claims satisfy those requirements.

**1. *Common Questions of Law or Fact Predominate Over Individual Ones.***

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "focuses on the quality of common issues rather than just the quantity." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Krakauer*, 311 F.R.D. at 394; *Ford v. Veterans Guardian VA Claim Consulting, LLC*, No. 1:23-CV-756 (M.D.N.C. Dec. 30, 2025) (predominance satisfied where "the key initial question requires statutory interpretation"). A common question is one where "the same evidence will suffice for each member to make a prima facie showing." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). The central question of whether the NC Final Letters are false, misleading, or deceptive will be resolved by comparing the letters against

Selene's own policies and state and federal regulations. *see* Exhibit A, B; Selene Dep. 66:10–68:23; 116:22–119:1; 123:22–124:14. If Selene's NC Final Letters violate the FDCPA, NCDCA, or NCCAA, they violate it as to every recipient whether that borrower received one letter or both. Predominance is "readily met" in "cases alleging consumer . . . fraud." *Amchem*, 521 U.S. at 625.

Since the FDCPA employs the objective "least sophisticated consumer" standard, no proof of reliance or subjective deception is needed. *Russell*, 763 F.3d at 394–95; Order [DE 21]. The NCDCA and NCCAA likewise do not require individualized subjective inquiry. *See McMillan*, 379 N.C. at 497. Courts find predominance satisfied in letter cases, because the single question whether the standardized letter violates the law drives the litigation and is provable with common evidence. *See also Bicking*, 2011 WL 5325674, at *3 (each member's claim "turns on the single question of whether [the letter] violated the FDCPA," which "clearly predominates over potential peripheral matters").

In addition, the statutory-damages frameworks themselves make aggregate, class-wide resolution more efficient than individual actions and promotes efficient aggregate adjudication by avoiding the need to measure individualized damages before class members can obtain relief. A contrary position would "ignore[] the rather settled principle that 'the question of statutory damages may be individualized but is minimally influential in the predominance analysis.'" *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 424 (E.D. Va. 2016).

Selene's anticipated reliance on the 'notice-and-cure' provisions in Plaintiffs' and borrowers' Deeds of Trust defeats neither typicality nor predominance. Selene asserts as

its Second Affirmative Defense that Plaintiffs failed to provide notice and an opportunity to cure prior to filing suit. However, in *Cruz*, the Court rejected Selene's attempt to weaponize this contractual provision to defeat class certification. *Cruz* at *11-12. *Cruz* held the notice provision is "cabined to disputes between the parties to the mortgage contract" and does not bar statutory consumer-protection claims based on deceptive collection letters. *Id.*, fn 7. In addition, in *Dominguez v. Selene*, the Court granted partial summary judgment against Selene on this precise issue because it was not entitled to any notice and cure pursuant to the Deed of Trust. *See Dominguez v. Selene Fin., LP*, No. 23-CV-06225-JSC, 2025 WL 2624870, at *4 (N.D. Cal. Sept. 11, 2025). Regardless, because Selene asserts this identical defense against the entire class based on standardized uniform instruments, the defense itself is a common question capable of class-wide resolution 'in one stroke.' *Dukes*, 564 U.S. at 350.

**2. *The Class Action Device is the Superior Method of Adjudicating These Controversies.***

Finally, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3). *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 713 (4th Cir. 1989). Factors to be considered are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability. *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997).

The superiority requirement is satisfied because this is a records-driven challenge to template letters and servicing policies, brought on behalf of borrowers with relatively

small statutory claims. Individual class members have little interest in separately controlling litigation over a uniform letter and modest recoveries. See Fed. R. Civ. P. 23(b)(3)(A); *Custer*, 813 F. Supp. 3d at 540–41; *Krakauer*, 311 F.R.D. at 400; *Koepplinger*, 2020 WL 2063416, at *32. Manageability likewise favors certification: class members are identifiable from Selene's records, liability turns on common proof, and statutory damages are formulaic. See Fed. R. Civ. P. 23(b)(3)(D); *Custer*, 813 F. Supp. 3d at 541; *Koepplinger*, 2020 WL 2063416, at *32; 15 U.S.C. § 1692k(a)(2)(B); N.C. Gen. Stat. §§ 75-56, 58-70-130. A class action will therefore achieve economies of time, effort, and expense, promote uniformity of decision, and provide finality to both sides. Class treatment is the superior method for adjudicating standardized-letter claims, where the modest statutory recovery available to each borrower gives little incentive to sue individually. See *Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272, 276 (E.D. Va. 2014) ("class litigation provides a superior means of adjudicating the claims presented here, as the minimal recovery available to most litigants under the FDCPA gives little incentive for class members to pursue their claims individually.")(citation omitted).

Alternatively, should the Court find any individualized determinations regarding damages weigh against full Rule 23(b)(3) certification, the Court should certify a liability-issues class under Rule 23(c)(4). The Fourth Circuit endorses issue certification where "common questions predominate in resolving the individual issues to be certified." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 439–41 (4th Cir. 2003). Certifying the core question whether Selene's automated letter templates contained materially false and deceptive threats in violation of the FDCPA and NCDCA or NCCAA—will materially

advance the disposition of the litigation by resolving the central dispute "in one stroke," leaving only damages for individualized treatment if necessary.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court certify the North Carolina State Law Class and the FDCPA Sub-Class, appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel.

Respectfully submitted this the 10th day of July, 2026.

*<u>/s/ Scott C. Harris</u>*
Scott C. Harris
NC Bar No.: 35328
Michael Dunn
NC Bar No.: 47713
**BRYSON HARRIS**
**SUCIU & DEMAY, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
F: 919-600-5035
sharris@brysonpllc.com
mdunn@brysonpllc.com

Edward Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
**MAGINNIS HOWARD**
7706 Six Forks Rd., Ste 101
Raleigh, NC 27615
T: 919-526-0450
Fax: 919-882-8763
emaginnis@carolinalaw.com
kgwaltney@carolinalaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

I hereby certify that the foregoing complies with LR 7.3(d) in that it contains less than 6,250 words in accordance with the rule.

*/s/ Scott C. Harris*
Scott C. Harris
**BRYSON HARRIS**
**SUCIU & DEMAY, PLLC**

## CERTIFICATE OF SERVICE

I certify I have cause to be filed electronically the foregoing Memorandum In Support of Plaintiffs' Motion for Class Certification which will be automatically served upon all attorneys of record via the Court's CM/ECF System.

*/s/ Scott C. Harris*
Scott C. Harris
**BRYSON HARRIS**
**SUCIU & DEMAY, PLLC**