IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-CV-00847-TDS-JEP

| | |
|---|---|
| CHRISTEL ENGLAND, KAREN MEYERS AND ANGELA JOYNER-PERRY, individually and on behalf of all other similarly situated, | ) |
| Plaintiffs, | ) |
| v. | ) |
| SELENE FINANCE, LP, | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I. NATURE OF THE MATTER .......... 1
II. STATEMENT OF UNDISPUTED FACTS .......... 2
A. Selene sent default notices required by Plaintiffs' loan documents. .......... 2
B. Plaintiffs allege the notices conflict with Selene's policies. .......... 3
C. Plaintiffs defaulted on their loans, triggering notices. .......... 5
III. QUESTIONS PRESENTED .......... 9
IV. LEGAL STANDARD .......... 9
V. ARGUMENT .......... 10
A. The Court lacks subject-matter jurisdiction because Plaintiffs have no concrete injury. .......... 10
1. Federal-court plaintiffs must prove they suffered a concrete injury. .......... 10
2. A plaintiff alleging a misleading statement under the FDCPA must show detrimental reliance to show a concrete injury. .......... 10
3. The Court should dismiss this case because Plaintiffs lack a concrete injury. .......... 12
a. England does not recall receiving a notice or taking any action in response. .......... 12
b. Meyers and Joyner-Perry paid only what they owed, which is not a concrete injury. .......... 14
c. Emotional distress is not a concrete injury. .......... 16
B. Summary judgment is appropriate as to Meyers and Joyner-Perry because they did not comply with the contractual notice provision. .......... 18
1. Selene is entitled to enforce the notice provision as servicer. .......... 19
2. Plaintiff Meyers and Joyner-Perry's claims arise from the deeds of trust. .......... 21
VI. CONCLUSION .......... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ... 9

*Bassett v. Credit Bureau Svcs., Inc.*,
60 F.4th 1132 (8th Cir. 2023) ... 12

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ... 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ... 9

*Charles v. Deutsche Bank Nat'l Tr. Co.*,
No. 1:15-CV-21826, 2016 WL 950968 (S.D. Fla. Mar. 14, 2016) ... 22

*Clapper v. Amnesty Internat'l USA*,
568 U.S. 398 (2012) ... 16

*Cooper v. Atl. Credit & Fin. Inc*,
822 F. App'x 951 (11th Cir. 2020) ... 18

*Dreher v. Experian Information Solutions, Inc.*,
856 F.3d 337 (4th Cir. 2017) ... 16

*Garland v. Orlans, PC*,
999 F.3rd 432, 439 (6th Cir. 2021) ... 17

*Giotta v. Ocwen Fin. Corp.*,
No. 15-CV-00620, 2016 WL 4447150 (N.D. Cal. Aug. 24, 2016), *aff'd*,
706 F. App'x 421 (9th Cir. 2017) ... 22

*Giotta v. Ocwen Loan Servicing, LLC*,
706 F. App'x 421 (9th Cir. 2017) ... 19

*Graves v. Foulger-Pratt Companies, LLC*,
No. 121CV01367MSNWEF, 2023 WL 2720795 (E.D. Va. Mar. 30,
2023) *amended on reconsideration in part on other grounds*, 2023 WL
4771220 (E.D. Va. May 18, 2023) ... 10, 11, 12, 17

*Hekel v. Hunter Warfield, Inc.*,
118 F.4th 938 (8th Cir. 2024) .......................................................................... 17

*Henley v. Regency One Capital, LLC*,
No. 1:22-cv-422, 2023 WL 5608016 (M.D. N.C. Aug. 30, 2023) ............................. 15

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025) .......................................................................... 16

*Kurzban v. Specialized Loan Servicing, LLC*,
No. 17-CV-20713, 2018 WL 1570370 (S.D. Fla. Mar. 30, 2018)............................... 21

*Larkin v. Finance Sys. Of Green Bay, Inc.*,
982 F.3d 1060 (7th Cir. 2020) .......................................................................... 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......................................................................... 10, 14

*Milam v. Selene Fin. LP*,
163 F.4th 416 (7th Cir. 2025) .......................................................................... 14, 21

*Penn Compression Moulding, Inc. v. Mar-Bal, Inc.*,
326 S.E.2d 280 (N.C. Ct. App. 1985) .......................................................................... 16

*Pierre v. Midland Credit Management, Inc.*,
29 F.4th 934 (7th Cir. 2022) .......................................................................... 11, 12, 14, 17

*Pruitt v. Resurgent Capital Services, LP*,
610 F. Supp. 3d 775 (D. Md. 2022) .......................................................................... 11, 12, 17

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3rd Cir. 2011) .......................................................................... 17

*Rodriguez v. Rushmore Loan Mgmt. Servs. LLC*,
No. 18-cv-1015, 2019 WL 423375 (N.D. Ill. Feb. 4, 2019) ....................................... 19

*Sedar v. Reston Town Ctr. Prop., LLC*,
988 F.3d 756 (4th Cir. 2021) .......................................................................... 9

*Shields v. Prof. Bureau of Collections of Maryland, Inc.*,
55 F. 4th 823 (10th Cir. 2022) .......................................................................... 12, 17

*Smith v. Flagstar Bank, FSB*,
No. C 18-02350, 2018 WL 3995922 (N.D. Cal. Aug. 21, 2018) ............................... 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 10, 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 10, 11

*Trichell v. Midland Credit Management, Inc.*,
964 F.3d 990 (11th Cir. 2020) .......... 11, 12

**Statutes and Rules**

Fed. R. Civ. P. 56 .......... 9

N.C. Gen. Stat. § 45-102 (2023) .......... 2

**Other Authorities**

12 C.F.R. § 1024.41(f)(1) .......... 4

24 C.F.R. § 203.606(a) .......... 2

## I. NATURE OF MATTER

Plaintiffs allege Selene, which services their mortgage loans, violated debt collection statutes[1] by sending default notices that improperly threaten acceleration and foreclosure. Plaintiffs agree that: (i) they defaulted by failing to make payments; (ii) Selene accurately described the default; and (iii) Selene was entitled to accelerate and foreclose based on that default. Plaintiffs nonetheless allege the notices were deceptive in two ways. First, some (not all) notices allegedly threaten to accelerate and foreclose after around 90 days of delinquency when Selene did not intend to do so until after 120 days of delinquency. Second, the notices allegedly state that Plaintiffs must make all delinquent payments to avoid acceleration and foreclosure, and Plaintiffs sometimes (not always) could have forestalled foreclosure by making only some delinquent payments.

Selene disagrees with Plaintiffs' characterization of the notices but seeks summary judgment for two independent reasons. ***First***, Plaintiffs cannot show that the alleged deception caused them a concrete injury, which is required to sue in federal court. One Plaintiff does not remember receiving the notices or taking any action in response. The other Plaintiffs made payments, but both started doing so before receiving the notice, and both paid no more than they owed, which cannot be a concrete injury. Plaintiffs also claim the notice caused emotional distress, but emotional distress alone cannot constitute a

[1] Plaintiffs sue under the Fair Debt Collection Practices Act (the "FDCPA"), and two state statutes. The Court dismissed Plaintiffs' negligent misrepresentation claim, and Joyner-Perry's FDCPA claim. ECF 21.

concrete injury. Without concrete injury, this Court lacks subject matter jurisdiction and should grant summary judgment for that reason alone.

***Second***, Plaintiffs Meyers and Joyner-Perry were contractually required to provide Selene with notice and an opportunity to cure the alleged harm before filing suit. Both failed to do so. As many courts have found, this precludes their claims, and the Court should enter summary judgment for this independent reason.

## II. UNDISPUTED FACTS

### A. Selene sent default notices required by Plaintiffs' loan documents.

This case arises from the Plaintiffs' mortgage loans, all of which are memorialized by a note and secured by a deed of trust. Ex. 1, Harvey Decl., ¶¶ 33, 34, 53, 54, 66, 67; Exs. 14, 15, 22, 23, 29, 30. Plaintiffs' notes require them to make monthly mortgage payments. *See, e.g.*, Ex. 14, p. 1, ¶ 4. If Plaintiffs default, their deeds of trust *require* the lender to send a notice advising of:

> (a) the default, (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

*See, e.g.*, Ex. 30, p. 13, ¶ 22.[2] North Carolina also *requires* lenders to send defaulted borrowers a notice containing similar information. *See* N.C. Gen. Stat. § 45-102 (2023).

[2] Meyers's and Joyner-Perry's Deeds of Trust state this notice requirement. England's Deed of Trust requires lender to follow HUD regulations to foreclose. Ex. 15, p. 4, ¶ 9(d). Those regulations contain a similar notice requirement. *See* 24 C.F.R. § 203.606(a).

Selene sent notices to Plaintiffs under the deed of trust and the statute. Plaintiffs attached the first page of two such notices to their complaint (ECF Nos. 1-2, 1-3); Selene attaches complete copies hereto. Ex. 18, 8/1/23 Ltr; Ex. 26. Both notices contain the information required by the deeds of trust. For example, the notice sent to Plaintiff Meyers (dated 04/17/2023) states:

> The mortgage loan associated with the Security Instrument is in default for failure to pay the amounts that came due on 03/01/2023 and all subsequent payments.
>
> To cure this default, you must pay all amounts due under the terms of your Note and Security Instrument, which includes any delinquent payments and regularly scheduled payments. As of 04/17/2023, your loan is due for 03/01/203 and the total amount necessary to cure your default is $1,999.16….
>
> The total amount you must pay to cure the default stated above must be received by 6/01/2023. Failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument, sale of the property and/or foreclosure by judicial proceeding and sale of the property.

Ex. 26, p. 1. The notice sent to England contained virtually identical language, though England's default was materially longer. Ex. 18, 8/1/23 Ltr.

**B. Plaintiffs allege the notices conflict with Selene's policies.**

The notices accurately described Plaintiffs' default and the past-due amount that Plaintiffs owed. Ex. 1, ¶¶ 41, 59, 71. The notices correctly stated that Selene was contractually permitted to refuse payments less than the total amount due. Ex. 23, p. 4, ¶ 1 ("Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.") The notices accurately described Selene's right to accelerate and foreclose if Plaintiffs failed to cure their default. Ex. 23, p. 14, ¶ 22 ("If

the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale incurred in pursuing the remedies provided.")

Plaintiffs do not claim Selene demanded amounts that Plaintiffs didn't owe or threatened remedies Selene didn't have. Instead, Plaintiffs allege that the notices were inconsistent with Selene's policies and practices in two ways. ***First***, Plaintiffs allege the notice threatens to begin foreclosure *immediately* after the cure period expires. ECF No. 1, ¶ 60. Thus, Plaintiffs allege the Meyers notice threatens to foreclose on June 2, 2023, when the loan was 91 days delinquent.[3] Ex. 26. Plaintiffs allege that language is inconsistent with Selene's policy, which would typically not refer a loan to foreclosure until at least 120 days of delinquency.[4] Ex. 1, ¶ 22; Ex. 4.

***Second***, Plaintiffs allege the notice threatens to foreclose unless the borrower pays the full past-due amount. ECF No. 1, ¶ 55. Plaintiffs allege this is inconsistent with Selene's practice of accepting certain amounts less than the total past due amount and postponing foreclosure but only if the loan was fewer than six months past due. Ex. 1, ¶ 19.

As described below, Plaintiffs' theories of liability do not uniformly apply to the notices Plaintiffs received.

---

[3] Selene disputes that interpretation.

[4] The 120-day limit comes from a federal regulation that prohibits starting foreclosure on many mortgage loans before 120 days of delinquency. 12 C.F.R. § 1024.41(f)(1).

### C. Plaintiffs defaulted on their loans, triggering notices.

**Christel England.** Selene began servicing England's loan on August 1, 2014. Ex. 1, ¶ 35; Ex. 16. England's loan has almost always been in default, which she attributed to illness and loss of employment, though she just recently became current. Ex. 1, ¶ 37; Ex. 33, England Tr., pp. 47:22-24; 55:2-56:8; 153:11-17; 167:1-168:8. As a result, Selene sent England eleven default notices (both under the deed of trust and under the state statute) in 2022 and 2023. Ex. 1, ¶ 40; Ex. 18. England submitted applications to Selene for foreclosure alternatives. Ex. 1, ¶ 44; Ex 19. In 2020, England executed a loan modification agreement bringing her loan current. Ex. 1, ¶ 38; Ex. 17. Selene initiated foreclosure against England in 2021, though the sale was postponed and eventually cancelled. Ex. 38.[5] England secured another modification to bring her loan current in 2022. Ex. 37; Ex. 33, pp. 132:13-135:17. England understood from her many experiences over the years that options existed to address delinquency outside of foreclosure. Ex. 33, England Tr., pp. 97:23-98:4.

After her modifications, England continued to default by missing payments. Ex. 1, ¶ 39. Selene sent England a default notice dated August 1, 2023 and attached to the complaint. Ex. 18, 8/1/23 Ltr.; ECF No. 1-2. England was seven months delinquent, having failed to make payments beginning January 1, 2023. Ex. 18, 8/1/23 Ltr., p. 1; Ex. 1, ¶ 41. Under Plaintiffs' interpretation, the notice threatened foreclosure after 255 days of delinquency, which was consistent with Selene's policies and practices. Further, Selene's

[5] The Court may take judicial notice of this court filing. Fed. R. Evid. 201.

policy would have been to accept nothing less than the full past-due amount from England because her loan was at least six payments past due.

Further, Selene told England it would accept less than the full past-due amount. Ex. 1, ¶ 46. On April 7, 2023, England's loan was four payments past due, and Selene advised England by phone that Selene would accept two payments in the amount of $1,166.94. Ex. 1, ¶ 47; Ex. 20. On April 24, 2023, Selene discussed with England by phone the $1,166.94 payment and asked England to call once the payment had cleared to set up a repayment plan. Ex. 1, ¶ 49; Ex. 21. Thus, England knew Selene's payment-acceptance practices.

England does not remember receiving any of the default notices or taking any specific action in response. Ex. 33, England Tr., pp. 107:14-17; 111:2-112:22; 114:16-115:18; 118:18-120:5; 136:22-137:17; 139:7-140:8; 141:21-142:15; 151:25-152:22; 157:13-159:15; 160:1-23; 161:16-162:17; 163:15-164:10. England regularly experiences lost and wrong mail at her home. *Id.*, pp. 73:19-74:4. England never brought her loan current during cure periods set forth in default notices. Ex. 1, ¶ 51. England made no payments from February 9, 2023, until June 18, 2026. Ex. 1, ¶ 52; Ex. 33, England Tr., pp. 152:24-153:8; 159:21-25; 164:16-20. Despite having no memory of them, England claims the notices caused her emotional distress, for which she has not sought treatment. *Id.*, pp. 168:21-169:12; 171:3-20.

**Karen Meyers.** Selene began servicing Meyers's loan on October 26, 2021. Ex. 1, ¶ 55; Ex. 24. Meyers missed monthly payments due on March 1, 2023 and April 1, 2023. Ex. 1, ¶ 56. Selene sent Meyers a default notice dated April 17, 2023. Ex. 1, ¶ 58; Ex. 26. The notice gave Meyers until June 1, 2023, her 91st day of delinquency, to cure her default.

Ex. 26. Meyers made her March 1, 2023, loan payment (bringing the loan due for April 1, 2023) on April 17, 2023, the same date as the notice. Ex. 1, ¶ 60; Ex. 34, Meyers Tr., pp. 99:8-22.

Meyers understood that she had options available to avoid foreclosure (*e.g.*, repayment plans, forbearance plans, and loan modification) based on an April 11, 2023, letter she received from Selene. Ex. 1, ¶ 57; Ex. 34, Meyers Tr., pp. 77:6-79:14. Meyers called Selene after receiving the notice to discuss foreclosure alternatives, including a forbearance plan. Ex. 1, ¶ 61; Ex. 34, Meyers Tr., pp. 101:7-23. Meyers submitted a request for forbearance to Selene on May 1, 2023, after receiving the default notice. Ex. 1, ¶ 62; Ex. 27; Ex. 34, Meyers Tr., pp. 102:1-103:21. Selene responded on May 10, 2023, asked for additional documents, and stated that once the documents were submitted, Selene would not refer the loan to foreclosure while it considered her request. Ex. 1, ¶ 63; Ex. 34, Meyers Tr., pp. 110:3-112:22; Ex. 28. Meyers understood that portion of the letter, but she did not need assistance from Selene because she received assistance from a Homeowners Assistance Fund. Ex. 34, Meyers Tr., pp. 112:18-114:2.

Meyers made one past-due loan payment on April 17, 2023, though not in response to the default notice dated that the same day. Ex. 1, ¶ 60; Ex. 34, Meyers Tr., pp. 99:8-22. Meyers made two more loan payments in May 2023, bringing the loan current. Ex. 1, ¶ 64; Ex. 34, Meyers Tr., pp. 113:10-114:17. Meyers could not recall where she got the money to make payments. Ex. 34, Meyers Tr., pp. 115:1-24; 140:19-141:3.

Meyers testified that she and her family were "devastated" when she received the default notice, and that she and her daughter suffered "great mental health issues" from the

notice. Ex. 34, Meyers Tr., pp. 82:2-7. Meyers has not sought mental-health treatment. Ex, 36, Meyers Response to Selene Interrogatory No. 7.

**Angela Joyner-Perry.** Selene began servicing Joyner-Perry's loan on October 27, 2021. Ex. 1, ¶ 68; Ex. 31. Joyner-Perry missed her monthly payments due on July 1, August 1, and September 1, 2022. Ex. 1, ¶ 69. Selene sent Joyner-Perry a default notice dated September 29, 2022. Ex. 1, ¶ 70; Ex. 32. The notice gave Joyner-Perry until November 13, 2022, her 134th day of delinquency, to cure her default. Ex. 32. Under Plaintiffs' interpretation, the notice threatened foreclosure no sooner than 135 days of delinquency, which was consistent with Selene's policies and practices.

On September 29, 2022, the same date as the default notice, Joyner-Perry made two payments, leaving her loan one payment behind. Ex. 1, ¶ 72. Joyner-Perry made the final payment to bring her loan current through the September 1, 2022 payment on October 7, 2022. Ex. 1, ¶ 73. Joyner-Perry's brother gave her the money she used to make the payment as a gift; he does not expect her to pay it back or to pay interest. Ex. 35, Joyner-Perry Tr., pp. 147:1-20; 169:18-170:13. Joyner-Perry did not pay more than she owed under the loan. *Id.*, pp. 152:6-153:3; 153:7-21. The default notice did not cause Joyner-Perry to bring her loan current; she would have done that regardless of the notice to avoid adverse credit consequences. *Id.*, pp. 148:23-149:4 ("Q: Okay. All right. So regardless of the letter, you would have tried to make a payment as soon as you could, to avoid credit reporting issues and late fees being charged to the account; is that true? A: If I could, I would have." (objection omitted))

Joyner-Perry testified that she "panicked" and was scared she would be "homeless" when she first read the default notice. Ex. 35, Joyner-Perry Tr., pp. 73:2-74:12. Joyner-Perry did not seek medical treatment. *Id.*, pp. 164:8-17. Her concerns were alleviated when she brought her loan current. *Id.*, pp. 110:24-111:9.

## III. QUESTIONS PRESENTED

1. Do Plaintiffs lack standing to sue in federal court because they lack a concrete injury as required by Article III of the U.S. Constitution?

2. Is Selene entitled to summary judgment on Meyers' and Joyner-Perry's claims because they failed to comply with the contractual condition precedent of providing pre-suit notice and an opportunity to cure?

## IV. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and…the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the non-moving party must demonstrate the existence of a genuinely disputed fact by citing "to particular parts of material in the record" or "showing that the materials cited [by the movant] do not establish the absence…of a genuine dispute." Fed. R. Civ. P. 56(c). "Under this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Facts are "material" only if disputes about them may affect the outcome

under applicable substantive law. *Anderson*, 477 U.S. at 248. A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 252.

## V. ARGUMENT

### A. The Court lacks subject-matter jurisdiction because Plaintiffs have no concrete injury.

#### 1. Federal-court plaintiffs must prove they suffered a concrete injury.

"Article III confines the federal judicial power to the resolution of 'Cases' and 'controversies,'" and a case or controversy requires a plaintiff with "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To have standing to sue in federal court, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiffs bear the burden of proving standing. *TransUnion*, 594 U.S. at 430-31 ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.").

#### 2. A plaintiff alleging a misleading statement under the FDCPA must show detrimental reliance to show a concrete injury.

An alleged statutory violation does not itself create Article III standing:

> Importantly, this Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." … [U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a

> defendant's statutory violation may sue that private defendant over that violation in federal court.

*TransUnion*, 594 U.S. at 426 (emphasis original) *quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). *See also Graves v. Foulger-Pratt Companies, LLC*, No. 121CV01367MSNWEF, 2023 WL 2720795, at *8 (E.D. Va. Mar. 30, 2023) ("standing under the FDCPA based solely on an alleged violation of the FDCPA…no longer appears viable after *TransUnion*, which requires plaintiffs alleging statutory violations to also have suffered concrete injuries in order to have Article III standing.") *amended on reconsideration in part on other grounds,* 2023 WL 4771220 (E.D. Va. May 18, 2023).

When evaluating concrete injury, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (*citing Spokeo*, 578 U.S. at 341). In the Fourth Circuit and elsewhere, claims alleging misleading statements under the FDCPA are most comparable to claims for fraudulent and negligent misrepresentation, so concrete injury requires detrimental reliance on the allegedly misleading statement. *Graves*, 2023 WL 2720795, *9 (finding no concrete injury in FDCPA claim because "Graves fails to plead any factual allegations that she relied on the fraudulent misrepresentations in any way to her detriment.") *citing Pruitt v. Resurgent Capital Services, LP*, 610 F. Supp. 3d 775, 781 (D. Md. 2022) ("detrimental reliance is so central a feature of fraud and negligent misrepresentation that Ms. Pruitt must at least show that she relied on the Resurgent Letter to her detriment in some way."). *See also Pierre v. Midland Credit Management, Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (finding lack of

standing and reversing judgment for plaintiff in FDCPA case because plaintiff "didn't make a payment, promise to do so, or otherwise act to her detriment in response to anything in or omitted from the letter."); *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 1001 (11th Cir. 2020) ("With no plausible allegation that *they* were ever at substantial risk of being misled, Trichell and Cooper cannot show standing based on such a risk to others.") (emphasis original).

**3. The Court should dismiss this case because Plaintiffs lack a concrete injury.**

**a. England does not recall receiving a notice or taking any action in response.**

England is straightforward; she has no memory of receiving any default notices and cannot say she did anything in response. Ex. 33, England Tr., p. 164:7-10 ("Q: If you don't remember getting the letter, then you probably didn't do anything in response to letters you don't remember getting? A: That's correct."). Thus, England admittedly did not detrimentally rely on the default notices. Courts dismiss such cases for lack of standing. *Graves*, 2023 WL 2720795, *9 (dismissing FDCPA claim for lack of subject-matter jurisdiction); *Pruitt*, 610 F. Supp. 3d at 784-85 (same); *Pierre*, 29 F.4th at 940 (reversing and remanding with instructions to dismiss FDCPA claim for lack of subject-matter jurisdiction); *Trichell*, 964 F.3d at 1005 (same); *Bassett v. Credit Bureau Svcs., Inc.*, 60 F.4th 1132, 1138 (8th Cir. 2023) (same); *Shields v. Prof. Bureau of Collections of Maryland, Inc.*, 55 F. 4th 823, (10th Cir. 2022) (affirming dismissal of FDCPA claim; "Shields pleaded only that the letters were generally prejudicial to consumers and caused her to be confused

and believe her debt was not accruing interest. But she never alleged the letters caused her to *do* anything.")

Beyond England's admission, several facts undermine any presumption that England detrimentally relied on alleged misinformation in the default notices. England never cured her default within the cure period in any notice she received. Ex. 1, ¶ 51. The notice England attached to the complaint asked her to cure her default on her 255th day of delinquency, months after Selene's 120-day policy permitted referring loans to foreclosure. Ex. 18, 8/1/23 Ltr, p. 1 (9/15/23 cure date for 1/1/23 delinquency). Six other notices England received also had cure deadlines after more than 120 days of default. Ex. 18, 3/16/22 Ltr., 3/18/22 Ltr., 4/26/22 Ltr., 8/30/23 Ltr., 9/6/23 Ltr., 9/6/23 Ltr. Further, England was very familiar with Selene's loss-mitigation process, having used it to obtain a loan modification in 2020 to resolve an earlier default (Ex. 1, ¶ 38), so there is no reason to assume she would have concluded that foreclosure was imminent or inevitable. Finally, England knew Selene would sometimes accept less than the full amount of her past-due payments, so there is no reason to assume she thought she always had to make a full payment. Ex. 1, ¶¶ 46-50; Exs. 20, 21. Thus, most of England's notices did not even contain the alleged threat to foreclose in less than 120 days. Further, England's multiple prior defaults made her knowledgeable about Selene's processes for dealing with defaulted borrowers. There is no reason to assume—contrary to England's own admission—that she relied to her detriment on allegedly misleading information.

The Court should enter summary judgment on England's claim because she cannot meet her burden of showing she suffered a concrete injury.

**b. Meyers and Joyner-Perry paid only what they owed, which is not a concrete injury.**

Meyers and Joyner-Perry remembered receiving notices and testified that the notices prompted them to make their past-due payments to bring their loans current. But both made partial payments the same day the notices were dated, indicating those payments were made *before* the notices were received and thus *not* caused by the notice. In any event, paying a pre-existing debt is not a concrete harm. The Seventh Circuit recently addressed this exact issue in a case the same attorneys brought against Selene based on the same theory. *Milam v. Selene Fin. LP*, 163 F.4th 416 (7th Cir. 2025). There, the Seventh Circuit stated that the plaintiff did not appear to have alleged a concrete injury because, although the plaintiff made a payment after receipt of the default notice, plaintiff paid only what she owed:

> As this case came to us, we questioned whether Milam had alleged a concrete injury sufficient to establish Article III standing. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); see also *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938–39 (7th Cir. 2022) (collecting cases applying the concrete injury requirement to FDCPA claims). After all, Selene's letter prompted her to make a payment that both sides agreed she owed and was overdue.

*Milam*, 163 F.4th at 418. The court ultimately found that plaintiff had pled a concrete injury for two reasons. First, she alleged her payment did not save her extra interest or avoid other expenses or negative consequences. *Id.* at 419. Second, she alleged that her payment cost her overdraft fees when she tried to also pay other expenses. *Id.*

Here, the evidence shows that Meyer and Joyner-Perry are situated differently for at least two reasons. ***First***, the Seventh Circuit relied on Milam's allegation that she did

avoid additional interest or other consequences by paying her debt. But here, on summary judgment, this Court can consider the terms of Meyer and Joyner-Perry's notes, which both impose late fees if Meyer and Joyner-Perry continue to remain in default. Exs. 22, 29, p. 2, ¶ 6(a) (4% late fee for payments more than 15 days late). Moreover, if either had failed to bring their loans current, other negative consequences could have included monthly property-inspection fees and negative credit reporting. Ex. 1, ¶¶ 23-25; Ex. 23, p. 11, ¶ 14; Ex. 30, p. 10, ¶ 14 (authorizing property inspection and appraisal fees, in event of default). Joyner-Perry also specifically acknowledged that she tried to make payments on time, regardless of the default notice, because it was important to her to avoid negative credit reporting. Ex. 35, Joyner-Perry Tr., p. 125:6-16.

***Second***, there is no evidence that Meyers or Joyner-Perry incurred additional expenses—beyond paying what they owed—due to bringing their loans current. Joyner-Perry testified that she brought her loan current with a gift from her brother that she has not and need not repay. Ex. 35, Joyner-Perry Tr., pp. 147:1-20; 154:3-11; 169:18-170:13. Meyers could not remember where she got the money to bring her loan current. Ex. 34, Meyers Tr., pp. 115:21-24; 140:19-141:3. Neither incurred overdraft fees or any other expense in bringing their loan current.

There is no evidence that Meyers or Joyner-Perry suffered financial injury because of paying what each owed on their loans. Their payments of admitted debts are not concrete harms. *Larkin v. Finance Sys. Of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020) (affirming dismissal of FDCPA claim for lack of standing where plaintiff, "did not contend, for example, that Finance System's communications caused the plaintiffs to pay debts they did

not owe or created an appreciable risk that they might do so."); *Henley v. Regency One Capital, LLC*, No. 1:22-cv-422, 2023 WL 5608016, *3 (M.D. N.C. Aug. 30, 2023) ("it is not clear that the $57.00 payment is an actual damage. Plaintiff does not allege he did not owe the alleged debt or if the debt is owed, whether the $57.00 was credited to his account."). The fact that paying an existing debt is not a concrete injury is consistent with the rule in North Carolina (and elsewhere) that "a promise to perform a pre-existing obligation is not sufficient consideration in exchange for a promise by the adverse party." *Penn Compression Moulding, Inc. v. Mar-Bal, Inc.*, 326 S.E.2d 280, 282 (N.C. Ct. App. 1985).

**c. Emotional distress is not a concrete injury.**

Courts in the Fourth Circuit have rejected attempts to use emotional distress as a concrete injury. In *Holmes v. Elephant Ins. Co.*, plaintiffs sued for a data breach they claimed "increased their risk of identity theft," and alleged "that this risk caused them significant fear, anxiety, and stress." 156 F.4th 413, 420 (4th Cir. 2025). The Fourth Circuit held that such emotional distress could not support standing unless it was paired with some other element of recoverable damages:

> [W]e hold that Bias and Shaw cannot furnish standing *for damages* solely through expenditures of time and allegations of emotional distress. … [T]he law has traditionally only recognized recovery for emotional distress as an additional, or parasitic element of damages that must be attached to a separate injury. The same protective measure applies in the standing context. Accordingly, we hold that *if* time spent and emotional distress felt are concrete injuries, they may serve as the sole basis for standing to recover damages only when incurred in response to a separate imminent harm. They do not suffice standing on their own.

*Holmes*, 156 F.4th at 434-435 (emphasis original) (citing *Clapper v. Amnesty Internat'l USA*, 568 U.S. 398 (2012) (other citations omitted). *See also Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) (affirming dismissal of data-breach case for lack of Article III standing; "[w]e also reject the Plaintiffs' claim that emotional upset and fear of identity theft and financial fraud resulting from the data breaches are adverse effects sufficient to confer Article III standing."); *Dreher v. Experian Information Solutions, Inc.*, 856 F.3d 337, 346 (4th Cir. 2017) (reversing FCRA judgment for consumer based on erroneous credit report because plaintiff lacked Article III standing; "it would be an end-run around the qualifications for constitutional standing if any nebulous frustration resulting from a statutory violation would suffice as an informational injury."); *Pruitt*, 610 F. Supp. 3d 775, 782-83 (finding no standing in FDCPA case based on allegedly misleading debt-collection communications; "it is not obvious to the Court why Ms. Pruitt's confusion—which alone is insufficient to confer standing …—caused her injury because it is unclear what actions Ms. Pruitt did or did not take to evaluate her options about the alleged debt.") (citations omitted); *Graves*, 2023 WL 2720795, *9 (finding no standing in FDCPA case based on allegedly misleading debt-collection communications; "any emotional distress by Graves about the situation is insufficient to confer standing under these circumstances.")

Other circuits have done the same. *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 943 (8th Cir. 2024) (reversing summary judgment for plaintiff based on lack of standing; "a state of confusion is not itself an injury, and nervousness, restlessness, irritability, amongst other negative emotions are not either." (citation omitted)); *Shields*, 55 F.4th at 830 (affirming dismissal of FDCPA claim for lack of standing; "confusion and

misunderstanding are insufficient to confer standing"); *Pierre*, 29 F.4th at 939 ("Psychological states induced by a debt collector's letter likewise fall short. … She further testified that she experienced emotional distress arising from her concern about being sued for the debt. But worry, like confusion, is insufficient to confer standing in this context."); *Garland v. Orlans, PC*, 999 F.3rd 432, 439 (6th Cir. 2021) ("a bare allegation of anxiety is not a cognizable, concrete injury."); *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3rd Cir. 2011) (rejecting claimed emotional distress from data breach as concrete injury under Article III); *Cooper v. Atl. Credit & Fin. Inc*, 822 F. App'x 951, 955 (11th Cir. 2020) (consumer confusion purportedly caused by debt-collection notices did not constitute a concrete harm under Article III).

Plaintiffs' claimed emotional distress is limited to general statements of distress; no Plaintiff has sought treatment. The Fourth Circuit and other courts have rejected the argument that such emotional distress can constitute a concrete injury.

Because no Plaintiff has met their burden of showing a concrete injury, the Court should grant summary judgment as to all Plaintiffs.

### B. Summary judgment is appropriate as to Meyers and Joyner-Perry because they did not comply with the contractual notice provision.

The Meyers and Joyner-Perry deeds of trust both contain the following provision requiring pre-suit notice and opportunity to cure:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the

> requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action….

Ex. 23, p. 13, ¶ 20; Ex. 30, pp. 11-12, ¶ 20. Meyers and Joyner-Perry did not provide this notice or opportunity to cure. Ex. 1, ¶¶ 65, 74; Ex. 34, Meyers Tr., pp. 135:19-136:2; Ex. 35, Joyner-Perry Tr., pp. 165:24-166:15; 167:16-168:3.

### 1. Selene is entitled to enforce the notice provision as servicer.

Although the notice and cure provision refers to the "Lender," a separate provision of the deed of trust extends the benefits of that provision to all "assigns" of the Lender. Ex. 23, p. 11, ¶ 13 and Ex. 30, p. 10, ¶ 13 ("The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.")

As loan servicer, Selene is an assign of the original lender and entitled to enforce the notice provision. *See Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422-423 (9th Cir. 2017) (affirming dismissal of claim against servicer under notice provision; "Although Ocwen is not the 'Lender' as defined in the Deed of Trust, it is an assign.… Therefore, as an assign of the Lender, the Notice Provision is a 'benefit' of the 'covenants and agreements' in the Deed of Trust, inuring to Ocwen."); *see also Rodriguez v. Rushmore Loan Mgmt. Servs. LLC*, No. 18-cv-1015, 2019 WL 423375, at *3 (N.D. Ill. Feb. 4, 2019) (dismissing claim against servicer for lack of notice because servicer "is entitled to enforce the notice and cure provision as an assignee of the Lender."); *Smith v. Flagstar Bank, FSB*, No. C 18-02350, 2018 WL 3995922, at *4 (N.D. Cal. Aug. 21, 2018) ("[T]he Loan Servicer

is an assignee of the Lender with respect to the collection of loan payments and is therefore entitled to relief under [the notice provision].").

When Selene serviced Meyers's and Joyner-Perry's loans, the loans were owned by U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust ("U.S. Bank Trust"). Ex. 1, ¶ 28. Selene services the loans under a Base Servicing Agreement. Ex. 1, ¶ 30; Ex. 12. U.S. Bank Trust executed a Limited Power of Attorney giving Selene the powers and rights to take certain actions in connection with servicing loans, including the Meyers and Joyner-Perry loans. Ex. 1, ¶¶ 28-29; Ex. 13.

In the Servicing Agreement, U.S. Bank Trust assigns to Selene several rights of the lender. For example, Plaintiffs' notes direct borrowers to pay the lender. *See e.g.*, Ex. 22, ¶ 1 ("I promise to pay … to the order of the Lender.") The Servicing Agreement assigns that right to receive payments to Selene. *See e.g.*, Ex. 12, ¶ 3.02 ("Servicer shall … collect all payments.") Further, Selene does not simply perform a collection service for a fee; the Servicing Agreement permits Selene to deposit the payments in an account of Selene's choice, earn income on the payments, and pay itself from the account, before transmitting the payments to the owner. *See e.g.*, Ex. 12, ¶¶ 3.03 ("interest paid on funds deposited in any Custodial Account … shall accrue to the benefit of the Servicer"); 3.04 ("Servicer shall … withdraw funds from the applicable Custodial Account … to pay to itself the related Servicing Fees.")

Similarly, Plaintiffs' notes empower the lender to charge late fees. Ex. 22, ¶ 6(A). The Servicing Agreement assigns this right to Selene. Ex. 12, p. 2, ¶ 3.03 (allowing servicer to retain Ancillary Income, including late fees).

Plaintiffs' deeds of trust give the lender the right to waive borrower's compliance with loan requirements. *See e.g.*, Ex. 23, ¶ 12 (referring to "[e]xtension of the time for payment or modification of amortization of the sums secured by this Security Instrument"). The Servicing Agreement assigns this right to Selene. Ex. 12, ¶ 3.01 ("the Servicer may waive, modify or vary any term of any Mortgage Loan or consent to the postponement of strict compliance with any such term ….").

Thus, the Servicing Agreement assigns numerous rights and powers of the original lender to Selene. This renders Selene an assign of the Lender and entitled to enforce the notice provision.

The Seventh Circuit recently reversed the dismissal of this same claim against Selene under the notice provision, holding that, on a motion to dismiss, the fact that Selene serviced plaintiff's loan did not establish that Selene was an assign of the lender. *Milam*, 163 F.4th at 420 ("Selene cannot show on the pleadings alone that it is an assignee under Milam's mortgage.") On summary judgment, though, this Court can consider the Servicing Agreement that documents the assignment of numerous rights of the lender to Selene.

### 2. Plaintiff Meyers and Joyner-Perry's claims arise from the deeds of trust.

The notice provision prohibits the borrower and lender from filing a lawsuit "that arises from the other party's actions pursuant to this Security Instrument" without first

providing notice and a reasonable period to take corrective action. Exs. 23 and 30, ¶ 20. Here, Plaintiffs sue based on the default notice Selene sent them. Selene sent those notices "pursuant to this Security Instrument," which requires a default notice before acceleration and foreclosure. Exs. 23 and 30, ¶ 22. Thus, Plaintiffs' claims all fall within the notice provision.

Multiple courts have held that FDCPA claims based on debt-collection communications fall within the scope of similar notice provisions. *Kurzban v. Specialized Loan Servicing, LLC*, No. 17-CV-20713, 2018 WL 1570370, at *3 (S.D. Fla. Mar. 30, 2018) (dismissing FDCPA claim against servicer for failure to comply with notice provision); *Charles v. Deutsche Bank Nat'l Tr. Co.*, No. 1:15-CV-21826, 2016 WL 950968, at *2 (S.D. Fla. Mar. 14, 2016) (same); *Giotta v. Ocwen Fin. Corp.*, No. 15-CV-00620, 2016 WL 4447150, at *1 (N.D. Cal. Aug. 24, 2016), *aff'd*, 706 F. App'x 421 (9th Cir. 2017) (same).

Meyers and Joyner-Perry both failed to provide Selene notice and an opportunity to cure as required by their deeds of trust. Selene is entitled to enforce this provision, which covers Plaintiffs' claims. The Court should enter summary judgment as to Meyers's and Joyner-Perry's claims for this additional reason.

## VI. CONCLUSION

For these reasons, Selene asks the Court to grant summary judgment in Selene's favor.

This 31st day of August, 2026.

TROUTMAN PEPPER LOCKE LLP

By: *<u>/s/ D. Kyle Deak</u>*
D. Kyle Deak (N.C. State Bar No. 35799)
TROUTMAN PEPPER LOCKE LLP
301 S. College Street, 34th Floor
Charlotte, NC 28202
Telephone: (919) 835-4133
Facsimile: (919) 835-4101
Email: kyle.deak@troutman.com

*Counsel for Defendant Selene Finance, LP*

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing document complies with the word count limits contained in LR 7.3(d)(1).

*/s/ D. Kyle Deak*
D. Kyle Deak